| 80 | 536 |
| 84 | 236 |

HALLIDAY MILLING COMPANY v. LOUISIANA & NORTHWEST
RAILROAD COMPANY.

## Opinion delivered November 19, 1906.

1.  EVIDENCE—OPINION OF AN EXPERT AS TO RAILWAY RATE.—The opinion of
    an expert concerning the reasonableness of a railway freight rate
    charged by a certain railroad which was chiefly based upon the report
    of such railroad to the State Railroad Commission was not rendered
    incompetent by evidence attacking the correctness of such report if
    the attacking testimony was not of such character that it would have
    been an arbitrary and unwarranted action upon the part of the jury
    to disregard it.   (Page 540.)

2.  SAME—QUALIFICATION OF EXPERT.—The opinion of an expert as to the
    reasonableness of a certain freight rate, based on special knowledge
    of rates under similar conditions, was admissible, although he did not
    have knowledge of the financial condition of the particular railroad
    and of the cost of transportation thereon, as this question is usually
    determined by usage or amount commonly or customarily paid for like
    services under similar conditions.   (Page 540.)

3.  SAME—REASONABLENESS OF FREIGHT RATE.—In determining the season-
    ableness of a local freight rate evidence of the through rate and the
    division thereof on both ends of defendant's line was admissible, as
    it is presumed that defendant would not maintain rates which were
    not fair and compensatory to itself.   (Page 540.)

4.  INTERSTATE COMMERCE—ABROGATION OF STATE STATUTES.—In so far as
    the State statutes undertook to regulate interstate freight shipments,
    they were superseded by the Interstate Commerce Act of 1887.
    (Page 541.)

5.  SAME—COMMON-LAW REMEDIES.—The Interstate Commerce Act, § 22,
    (3. Comp. Stat. p. 3171), by providing that "nothing in this act con-
    tained shall in any way abridge or alter the remedies now existing at
    common law" continued in force the common-law remedies in the
    matter of interstate shipments.   (Page 541.)

6.  CARRIER—DUTY AT COMMON LAW.—At common law a carrier could
    charge only reasonable compensation for the services performed.
    (Page 541.)

7.  INTERSTATE COMMERCE—COMMON LAW.—The principles of the common
    law are operative upon all interstate commercial transactions, except
    in so far as they are modified by Congressional enactment.   (Page
    542.)

8.  SAME—JURISDICTION OF STATE COURT.—The Interstate Commerce Act
    of 1887, which provides that the Federal Courts shall have jurisdic-
    tion of actions brought under it (section 9), but also that no existing
    common-law remedies should be abridged (section 22), did not deprive

a State court of jurisdiction of suit based on the common-law right to recover excessive charges on interstate shipments.    (Page 542.)

Appeal from Columbia Circuit Court; *Charles W. Smith,* Judge; reversed.

*C. W. McKay,* for appellant.

1.    If there is some evidence tending to establish the plaintiff's cause of action, it is error to direct a verdict for the defendant; and this is true even though the weight of evidence may be with the party in whose favor the verdict is directed.    71 Ark. 445; 57 Ark. 527; 71 Ark. 305; 61 Ark. 442; 62 Ark. 63; 63 Ark. 94; 37 Ark. 164.

2.    A witness' opinion is admissible as evidence where experience and observation in the special calling of the witness gives him knowledge of the subject in question beyond that of persons of common intelligence.    56 Ark. 466; 55 Ark. 65; 95 U. S. 297.

3.    A shipper in a case of interstate carriage may in a state court under the common law be accorded relief from unreasonable freight rates.    85 S. W. 1052, s. c. 60 Cent. Law Journal, 468.

*Stevens & Stevens* and *Moore, Smith & Moore,* for appellee.

1.    No rights can be predicated upon a State statute if Congress has legislated upon the same subject.    88 S. W. 836; 158 U. S. 98; 202 U. S. 242.    The fact that the complaint prays for the taxing of an attorney's fee as part of the costs of the action, which can only be taxed in a suit brought under the statute, removes any doubt whether plaintiff brought his suit under the statute, or whether the averments constitute a common-law action.    80 S. W. 580.    If the plaintiff made a mistake in declaring under the statute, its complaint, on demurrer, would fail.    There could be no error in the court instructing a verdict for defendant where plaintiff's cause of action must have failed if a demurrer had been interposed to the complaint.

2.    The right to question the reasonableness of interstate rates is, under the Interstate Commerce Act, a matter of primary as well as exclusive jurisdiction in the Federal courts, as held in 58 Fed. 858.    The rule established by the decisions of Federal circuit courts should be followed, rather than the rule established in 85 S. W. 1052, in the absence of a decision by the United States Supreme Court.    See, also, § 8, art. 1, Const. U. S.

3.    The testimony of rate clerk Connolly was incompetent because it was based upon the rate that the Railroad Commission had established, and also upon the fact that the reports of the company filed with that commission showed that the company was carrying a surplus, whereas the evidence shows conclusively that there was not only a surplus, but a deficit.

HILL, C. J.    Appellant was a grain dealer at Cairo, Ill., and shipped seven cars of corn and one car of flour to customers at Magnolia, Arkansas, in December, 1905, at a delivered price. The shipments were made over St. Louis Southwestern Railway from Cairo, Ill., to Pine Bluff, Ark., there consigned to a local agent of appellant, and by him reshipped over the St. Louis Southwestern from Pine Bluff to McNeil, and from McNeil to Magnolia over line of appellee. The latter distance is 6.4 miles, and the distance from Pine Bluff to McNeil about 100 miles. Cairo to Magnolia is about 378 miles. The appellee railroad collected from appellant's consignees 12½ cents per hundred pounds for its freight for shipment over the 6.4 miles from McNeil to Magnolia; and appellant repaid to its consignees the charge over its contract price of delivery, and sued appellee company for an amount claimed to be excessive and unreasonable and unjust, and alleged six cents per hundred pounds on corn and 7½ cents per hundred pounds on flour would have been a reasonable rate, and prayed for recovery of the sum paid over said rate. The court directed a verdict for the defendant, and the sole question is whether appellant adduced evidence authorizing it to go to the jury on the charge made.

In passing upon this question only the evidence favorable to appellant is pertinent, and only it will be reviewed.

Just previous to the shipments in question there had been a joint rate between St. Louis Southwestern Railway Company and appellee from Cairo to Magnolia on corn twenty cents and on flour twenty-five per hundred weight, of which appellee received thirty per cent. or six cents on corn and 7½ cents on flour. Whether this rate was in force at time of shipment was a matter of conflict in the evidence. There was also a joint rate existing between appellee near this same time with other connecting roads for corn and flour from Cairo to Magnolia coming over Vicksburg, S. & P. Railroad to Gibbsland, La., there connecting with

appellee, and over appellee's road from Gibbsland to Magnolia, a distance of 54 miles, for much less than the charge complained of.    There was also in evidence the Arkansas commission tariff, which was five cents on corn and eight cents on flour from McNeil to Magnolia.    There was evidence from a witness thoroughly familiar with rates on the commodities under inquiry, and in this section of the country, who testified to the unreasonableness of the charges made, and sustained as reasonable and fair the charges as alleged in the complaint.    The basis of his estimates was knowledge of rates under similar circumstances and knowledge of the usual divisions of accepted rates.    Other testimony along the same line was offered.

Appellee also introduced the rate clerk of the Arkansas Railroad Commission, whose duties were to assist the commission in fixing rates within the State, and who had full knowledge of existing rates and conditions.    He had before him the financial statement of appellee road rendered to the commission (the correctness of which was attacked by appellee) showing its earnings and expenses, capital invested, etc.    Taking into consideration proper compensation to the road and a proper rate, based on other considerations as well as a compensatory one, he pronounced the rate charged excessive and unreasonable, and fixed five cents on corn and eight cents on flour as the reasonable rate.

Appellant's superintendent explained why the shipment was made to Pine Bluff and reshipped from there to Magnolia in this way: He was under the impression that a through rate theretofore in force from Cairo to Magnolia had been withdrawn.    He afterwards learned this was a mistake, but, believing that there was no through rate, he thought he had better ship to appellant's local agent at Pine Bluff, and let him reship on a combination of local rates, rather than ship direct to McNeil on the St. Louis Southwestern Railway, where he had no one to make reshipment over appellee's line from there to Magnolia.    Pine Bluff is a city on the St. Louis Southwestern Railway between Cairo and McNeil.

1.    Appellee argues that the evidence of the Railroad Commission rate clerk was incompetent because it was shown by the president and auditor of the company that the financial statement furnished the Railroad Commission by the former auditor was

not correct, and showed a surplus, when it should have shown a deficit. The report was duly verified by proper officers of the company, and was made pursuant to law, and was a competent basis from which to make estimate on proper compensation in rates, and was furnished for that purpose. It was open to appellee to show errors in it, but that did not destroy the admissibility of testimony based upon it unless the testimony against it was uncontradicted, reasonable and consistent in itself, not weakened by cross-examination nor its credibility impeached.· If within the latter category, then the jury could not arbitrarily disregard it. The testimony against the report was not of such a character that it would have been an arbitrary and unwarranted action on part of the jury to have disregarded it. The rate clerk did not base his testimony entirely upon the financial statement, although it was one of the controlling factors.

An attack is made upon testimony of a former superintendent of appellant company. His testimony as to rates has heretofore been mentioned. He properly qualified himself as an expert to testify on the subject within the rules governing the qualification of experts. 1 Wigmore on Evidence, § 556; 5 Enc. of Evidence, pp. 517 and 599; *Railway Company* v. *Bruce,* 55 Ark. 65.

The expert's evidence of a reasonable rate based on special knowledge of rates under similar conditions was properly admissible, although he did not have knowledge of the financial condition of the road and cost of transportation on this line, for a reasonable compensation is usually determined by usage or the amount commonly or customarily paid for like services under similar conditions. *Johnson* v. *Pensacola & P. Rd. Co.,* 16 Fla. 623, S. C. 26 Am. Rep. 731; *Louisville, E. & St. L. Ry.* v. *Wilson,* 4 L. R. A. 244; 4 Elliott on Railroads, § 1560; Hutchinson on Carriers, § 447; Ray on Neg. of Imp. Duties Freight Carriers, p. 845. See, also, 2 Elliott on Railroads, § § 692, 663.

The evidence of through rates and the division thereof on both ends of appellee's line was also admissible. It would be fair to deduce therefrom that the appellee would not agree to maintain rates which were not fair and compensatory to itself, as well as reasonable for the services rendered. Of course, none of these matters was controlling, and it was open to appellee to

remove them by a weight of evidence or to explain them, but the facts adduced were competent and sufficient to go to a jury as tending to prove the matters charged, and the case should have been sent to the jury, unless the matters urged by appellee presented legal obstacles.

2.    Appellee says that appellant's action was based on State statutes regulating freight rates on interstate shipments, and that Congress has by statute covered the same field, and hence it can not be maintained.    If this is a statutory action, the proposition is correct.    *Gulf, etc., Rd. Co.* v. *Heffly,* 158 U. S. 98; *Texas & P. Ry. Co.* v. *Mugg,* 202 U. S. 242; *Spratlin* v. *St. Louis S. W. Ry. Co.,* 76 Ark. 82.

Originally, this action was brought for overcharge, penalty and attorney's fees, and it may fairly be inferred that the pleader was basing his action upon secs. 6730, 6733 and 6621, Kirby's Digest.    The penalty feature (sec. 6733) was stricken out, and an amended complaint filed which seems to be in the language of, and pursuant to, secs. 6730 and 6621, *supra.*    It is conceded by appellant that, under the decision in *Porter* v. *St. Louis S. W. Ry. Co.,* 78 Ark. 182, the facts in this case make the shipments in question interstate transactions, and they will be so treated.*    That decision was rendered after the trial of this case.    "Reasonable and just" rates are a subject of legislation in sec. 1 of the Interstate Commerce Act of 1887 (3 Comp. Stat. p. 3154), and therefore the subject-matter of sec. 6730, Kirby's Digest, is covered by the Congressional legislation, and the State statute is ousted from applying to interstate transactions.

Appellee contends that this ends the case, and so it does unless the complaint, and facts adduced to support it, can be sustained as a good common-law action.

Sec. 22 of said Interstate Commerce Act provides: "And nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies."    3 Comp. Stat. p. 3171.

At common law the carrier could charge reasonable remuneration for the services performed, and no more.    The rea-

---

* See, however, *Gulf, C. & S. F. Ry. Co.* v. *Texas,* 204 U. S. 403.
(Rep.)

sonableness of the charge is determined by similar services under like condition the cost of service, fair compensation for capital invested, and the manifold elements entering into it which makes rate-making one of the problems of the age. The common law went no further in this regard than to demand that the charge be a reasonable and fair one. *Johnson* v. *Pensacola & P. Rd. Co.,* 16 Fla. 623, S. C. 26 Am. Rep. 731; Hutchinson on Carriers, § 447; 4 Elliott on Railroad, § 1560; Ray on Freight Carriers, p. 845.

It follows that section 6730, Kirby's Digest, is but declaratory of the common law, and a complaint good under one is good under the other.

Is there a common law in interstate transactions? Let Mr. Justice BREWER answer it. "There is no body of Federal common law separate and distinct from the common law existing in the several States in the sense that there is a body of statute law enacted by Congress separate and distinct from the body of statute law enacted by the several States. But it is an entirely different thing to hold that there is no common law in force generally throughout the United States, and that the countless multitude of interstate commercial transactions are subject to no rules and burdened by no restrictions other than those expressed in the statutes of Congress. * * * Can it be that the great multitude of interstate commercial transactions are freed from the burdens created by the common law, * * * and are subject to no rule except that to be found in the statutes of Congress? We are clearly of opinion that this can not be so, and that the principles of the common law are operative upon all interstate commercial transactions except so far as they are modified by Congressional enactment." *W. U. Tel. Co.* v. *Call Publishing Co.,* 181 U. S. 92; See, also, Judson on Interstate Commerce, § 66.

Appellee insists that a suit to enforce a common-law right growing out of an interstate shipment is a matter of primary and exclusive jurisdiction in Federal courts, and cites to sustain that position a decision by Judge Grosscup, *Swift* v. *Philadelphia & R. Rd. Co.,* 58 Fed. Rep. 858, decided in 1893. This decision is bottomed on the proposition that the common-law rule forbidding common carriers from exacting unreasonable charges does not apply to interstate transactions, and that such an action is purely

one based on the Interstate Commerce Act.   If Judge Grosscup's premise was right, his conclusion would be sound, for the jurisdiction to enforce statutory rights conferred by the Interstate Commerce Act of 1887 is conferred on United States courts by section 8 of said act.   3 Comp. State, p. 3159.   But Judge Grosscup's premise was wrong, and directly in opposition to the principles announced eight years later in the decision quoted from. The court is unable to see any reason why the State courts may not entertain jurisdiction of a suit based on common-law rights flowing from an interstate shipment when Congress has expressly declared that such remedies are not ousted by the legislation on the subject of interstate commerce, but that such legislation is in addition to existing common-law remedies.

Chief Justice Conner for the Court of Civil Appeals in Texas so fully and completely reasoned out in principle and on authority the soundness of this position that he left nothing further to be said on it.   *Abilene Cotton Oil Co.* v. *Texas & P. Ry. Co.*, 85 S. W. Rep. 1052-3, and same case in 60 Central Law Journal, 468, where an interesting note is found.*

Appellant was entitled to go to the jury with its case.

Reversed and remanded.

---

* NOTE.—Since the opinion herein was handed down, the case of *Abilene Cotton Oil Co.* v. *Texas & Pac. Ry. Co.* was reversed on appeal by the Supreme Court of the United States (*Texas & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.* 204 U. S. 426).   (Rep.)