GRANT D. CARMER, Respondent, v. THE NEW YORK CENTRAL & HUDSON RIVER RAILROAD COMPANY, Appellant.

(County Court, Erie County, October, 1911.)

Carriers — Carriage of goods — In general — Duty of carrier to equip cars.
Implied contracts — Contracts implied in law — Obligation to repay money expended at defendant's request — Request — Facts from which request may be inferred.
    The duty of a common carrier to properly equip its cars for the shipment of goods is a common law duty and does not depend upon the Federal act to regulate commerce; and, where the shipper is compelled to furnish bulkheads or doors inside cars for the proper shipment of his goods, a promise on the part of the carrier to pay therefor is implied, and the expense thereof may be recovered by the shipper in an action therefor.

APPEAL from a judgment of a justice's court, rendered in favor of plaintiff.

Hoyt & Spratt (Alfred L. Becker, of counsel), for appellant.

Robert W. Farrington, for respondent.

TAYLOR, J.   This action was brought in a court of a justice of the peace of this county against the appellant to recover the sum of twenty-seven dollars.   Of this amount six dollars was claimed to be due for lumber furnished for temporary bulkheads placed by the respondent in six cars belonging to appellant and shipped from Clarence Center, N. Y., to points without the State of New York.   The con-

troversy on this appeal is solely as to the claim for the value of this lumber.

No written pleadings appear in the return, other than an informal written statement of plaintiff's claim made by the presiding justice and a stipulated general denial. But, so far as the controversy mentioned is concerned, this may fairly be considered as an action for the reasonable value of said materials furnished.

The appellant's claim is that the respondent's sole right to recover in the particular mentioned is dependent upon his getting an allowance according to scheduled interstate shipping rates of the appellant; that the appellant must be presumed to have obeyed the Federal statutes governing filing and posting schedules relating to " transportation " of goods under the Act to Regulate Commerce; that no ruling has been made by the Interstate Commerce Commission as to this matter in controversy; that the appellant is not at present required to file or post any schedule bearing thereon; and that this is a question cognizable by the Interstate Commerce Commission or the United States courts, under section 9 of said act, and not by the State courts, since all unfairness in rate-making and all devices to accomplish preferences or rebating are thus solely cognizable.

Section 6 of the Act to Regulate Commerce requires the filing of schedules of interstate transportation rates with the Interstate Commerce Commission and posting notices thereof in railway stations. Section 12 bears on the enforcement of the provisions of said act. Section 1 defines the word " transportation " to include, among other things, " all instrumentalities and facilities of shipment or carriage, irrespective of ownership or any contract for the use thereof, * * * all services in connection with the receipt, delivery, * * * transfer in transit * * * and handling of property transported." Said section further states it to be the duty of the carrier to provide and furnish such transportation, upon reasonable request therefor, and to establish just and reasonable rates applicable thereto. Furthermore, section 3 of the act requires common carriers to afford all reasonable and proper facilities.

Other sections of the act, for example sections 2, 3 and 15, provide that, where special rates, rebates and the like are given, or other devices used whereby any preference or advantage is given, or where any unjust regulations are made or practices are indulged in affecting rates for the carriage of interstate property, the Interstate Commerce Commission is given power to act and to do equity between the parties.

Section 9 of the act provides that those claiming to be damaged by any common carrier, subject to the provisions of the act, may bring suit in the United States courts, or make complaint to the Commission. And section 22 in part says that nothing in this act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.

It was held in Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, reversing the doctrine laid down in some of the State courts, for example in Halliday Co. v. Louisiana Co., 80 Ark. 536, that section 22 cannot in reason be construed as continuing in shippers a common law right, the continued existing of which would be absolutely inconsistent with the provisions of the act to regulate commerce; futhermore, that the sole jurisdiction to grant "reparation" in any case involving interstate commerce lay in the bodies mentioned above in section 9 of said act to the exclusion of the State courts. There is no affirmative proof that this appellant has filed with the Interstate Commerce Commission, or has posted or had on hand for inspection at Clarence Center, any schedule bearing on rates for *interstate* carriage of property. The only proof as to this is relative to intra State transportation, the circular numbered 3100, offered in evidence, and stated to be on file with the Interstate Commerce Commission, having no bearing on interstate carriage. It appears, also, in the testimony, that the Interstate Commerce Commission has made no ruling covering the matter here in controversy.

Whether or not, as counsel for appellant contends, it must be presumed that the appellant has obeyed the law in the particular mentioned, I deem immaterial. It appears from the testimony of Mr. Schaad, representative of the appellant

at Clarence Center, that it was not the custom of the appellant to make allowances in cases not covered by said circular No. 3100. However, as I view it, this is not a question of " reparation," or of allowances or interstate rates, but purely one of " equipment," of furnishing lumber for the appellant to equip these cars, not voluntarily, but under an implied contract to receive the reasonable value thereof. I am fortified in this opinion by the reasoning of the Interstate Commerce Commission in Scofield v. Lake Shore & Michigan Southern R. Co., 2 I. C. C. Rep. 90. In discussing sections 1 and 3 of said act, at pages 116 *et seq.,* the Commission implies that the remedy in a case similar to the one at bar is in the State courts, for the reason that no power is given to the Interstate Commerce Commission to compel shippers to supply any particular equipment of cars. The Commission states that, if improper equipment is furnished as a device (section 2) to give unlawful preferences in rates, a severe penalty is furnished by the statute. But the Commission also concluded, as I read the decision, quoting said section 22 of the act, that the duty to furnish equipment is a common law one, not covered by the act to regulate commerce, and must be enforced in tribunals other than those mentioned in section 9 of said act. If there were any valid claim by either party that this was any device to accomplish preferences or unfairness in rates, the appellant's position might be tenable. But there is no such claim.

Therefore, though no express contract has been pleaded or proved, I conclude that the action was well brought in its entirety before the justice below. Appellant's witness Schaad testifies that it was necessary to use these bulkheads or doors for conveniently making the shipment in question; that the cars were not furnished with such doors by the company, and that the shipper furnished the lumber for them. The plaintiff testifies that one dollar a piece is a reasonable charge.

The judgment of the court below is affirmed, with costs.

Judgment affirmed, with costs.