# SUPREME COURT

### OF THE

## STATE OF COLORADO

JANUARY, APRIL and SEPTEMBER TERMS, 1914

[No. 7338.]

KINDEL v. COLORADO & SOUTHERN RAILWAY COMPANY.

1. PRACTICE IN SUPREME COURT—*Questions not Determined by the Trial Court*, will not be considered. (4)

2. ——*Cross Errors*—Errors to the prejudice of defendant in error will not be considered when no cross errors are signed. (4)

3. EVIDENCE—*Competency*—Action at common law to recover moneys paid to a carrier for the transportation of coal from certain stations named, to Denver, upon allegation that the rate exacted was excessive.

(1)

*Held*, that plaintiff was entitled to show the rate charged by defendant upon coal, from the same stations to Denver, when destined to points beyond Denver, and the usual rate for the transportation of coal for substantially the same distance for which that of plaintiff was carried, without first showing that the conditions of the carriage in such instances, were similar to those attending that in question, but subject to the right of the carrier to show dissimilarity in the conditions, as affecting the weight of the evidence, because such dissimilarity was peculiarly within the knowledge of the carrier. (5, 13)

*Error to Denver District Court.*—HON. GEO. W. ALLEN, Judge.

Mr. CARLE WHITEHEAD, Mr. ALBERT L. VOGL for plantiff in error.

Mr. E. E. WHITTED, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This was an action to recover from the defendant railroad company, the difference between freights paid for the shipment of coal, and what the plaintiff alleged to be a reasonable charge for the service rendered.

The gist of the action is found in the following allegations of the complaint:

"That since July 1, 1907, plaintiff has thus bought and had shipped to him at Denver, Colorado, from various towns in said 'northern coal fields,' to-wit: Louisville, Lafayette and Marshall (all being in the state of Colorado), for use in said business as aforesaid, various and sundry amounts of coal in carload lots, and has paid defendant freight charges for such shipments at the rate of three cents per hundred pounds, or sixty cents per ton, on slack coal, and four cents per hundred pounds, or eighty cents per ton, on coal known as 'mine run,' these being the only kinds of coal so received by plaintiff. * * *

"That said rates, charged by defendant and paid by plaintiff as aforesaid, were and. are unjust, unreasonable, exorbitant, excessive and unlawful, and that a rate of two cents per hundred pounds, or forty cents per ton, on slack coal and two and two-thirds cents per hundred pounds, or fifty-three and one-third cents per ton on 'mine run' coal for such shipments would have been at all of said times and would still be a just, reasonable and lawful rate; that is to say, plaintiff alleges that two-thirds of the rate actually charged and collected by defendant was and is a just and reasonable rate and that one-third of the rate so charged and of the amount so exacted and collected from plaintiff by defendant as aforesaid was and is unjust, excessive and unlawful."

Judgment was asked for $294.26.   The suit was commenced in the county court on the 31st day of August, 1908.  Demurrer to the complaint was sustained, and the cause appealed to the district court.  The demurrer was overruled in the district court and the defendant required to answer.  The answer denied that the rate charged and received was unreasonable, and alleged that the sums of money paid, as set forth in the complaint, were voluntary, without protest, duress or fraud, and represented the regular rate of transportation charged by the defendant for the carriage of such product, and was and is the legal and published rate, as shown by defendant's tariff in effect at the time of said shipments, upon coal from the northern coal fields of Colorado, to Denver. The shipments and sums paid were admitted.  The case was tried to the court without a jury.  The court declined to permit the plaintiff to introduce certain testimony offered as tending to establish that the rate charged was unreasonable, and likewise as to what was a reasonable rate in such case.  Whereupon the plaintiff refused to proceed further and the court directed a verdict for the defendant.

The rejection of this testimony is the only error assigned.  Counsel for defendant in error have argued in the briefs the allegation in the answer that the payments

were voluntary and that for such reason, the action will not lie, but cross error has not been assigned. Neither does it appear that the question was determined by the lower court; so that under the well established rule of this court, this question is not in the case, and therefore is not considered, and expressly not determined.

The specific assignments of error important to be considered are:

"1. In refusing to allow plaintiff to testify what defendant charges to haul coal from Louisville, Colorado, Lafayette, Colorado, and Marshall, Colorado, to Denver, when such coal was destined to some point beyond Denver, and in sustaining defendant's objection to the introduction of said testimony.

"2. In refusing to allow plaintiff to testify as to what is the usual freight rate on coal for twenty and twenty-five mile hauls, and in sustaining defendant's objection to the introduction of said testimony."

Before the rejection of the testimony complained of, the plaintiff had testified in substance as follows:

"That during the years 1907 and 1908, he was engaged in manufacturing bedding, and in compressed air carpet cleaning in the city of Denver; that he used 'Northern Lignite' coal for motive power in said business, because it 'serves our purpose better,' that during those two years he had paid to the defendant the freight charges upon thirty shipments of coal from Louisville, Lafayette and Marshall, Colorado, to Denver, as shown by the freight bills introduced in evidence; that the distance from Louisville, Lafayette and Marshall, Colorado, to Denver was about twenty to twenty-four miles, and that he paid as freight rates upon those thirty shipments eighty cents per ton on 'mine run' coal and sixty cents per ton on slack coal; and that he had made demand upon the defendant for a refund of the excessive charges collected upon these shipments, which demand had been refused; that since that demand had been made the rate on 'mine run' coal had been reduced to seventy cents per ton."

It will be borne in mind that this is an action at common law, and that the only question to be determined, is as to what constitutes a reasonable rate for the service rendered in the particular case.   We are therefore relieved from the construction of federal or state statutes, which are so generally involved in the reported cases upon this subject, and wherein these statutes in themselves, are chiefly controlling.

It will be seen that the matter here involved is confined to a question of the competency of a line of evidence offered in the particular case, not as establishing or in any sense conclusive, but as a fact tending to prove the reasonableness of a rate.

It is contended by the defendant in error, and which contention was apparently sustained by the court, that the rate for coal hauled over the same tracks, by the same company and from the same points to Denver, but destined for delivery at points on the same railroad beyond Denver, may not be taken into consideration as one of the factors entering into a determination of what is a reasonable rate for the services here in question.   Also that the rate charged for a similar service by other companies may not be considered for such purpose, unless it first be shown that the conditions are similar, and it would also seem to be contended that this claimed similarity so first to be shown, must cover every fact constituting the alleged similar circumstances, such as cost of transportation, physical value, population, volume of business, and other, if there be other, circumstances entering into the question.

The question as to what facts or circumstances are proper to be considered in reaching a conclusion as to the reasonableness of rates for transportation of commodities, is one that has sorely perplexed the courts and commissions, and is at this time far from being settled.

While the Supreme Court of the United States has in certain cases said what may be considered as properly entering into such consideration, it has not as yet confined the rule to the factors specifically mentioned in

such cases. And even as to these the want of expert knowledge upon the part of judges has made the general rule thus laid down, in many instances, impracticable of application, and often impossible of compliance. One of the difficulties in this regard was stated in the case of *Marten v. Louisville & N. R. Co.*, 9 Interst. Com. R. 597 where the question of rate comparison was being considered, as here, and where the Interstate Commerce Commission said:

"It is often difficult to say what constitutes a reasonable rate, and more difficult to give in detail the reasons that lead to the conclusion reached. Although the supreme court of the United States has furnished certain rules by which to test the reasonableness of transportation charges, and although this commission has endeavored to apply those rules, yet whenever it has interrogated railway officials as to whether or not they are governed by them when making rates of transportation, they have invariably answered in the negative and said that to do so would be impracticable. The carriers do not apparently possess the necessary data for that purpose and there is at present no other source from which the commission can obtain such data. Under these circumstances to hold that, after substantial dissimilarity of circumstances and conditions has been shown, the longer-distance rate cannot in any case or to any extent be considered by way of comparison in determining whether or not the shorter-distance rate is unreasonable or unduly prejudicial, particularly when, as in this case, competition and other compulsory conditions are not found to justify the whole disparity between the shorter and longer distance rates, would be to reject a most appropriate and necessary test of the reasonableness and justice of railway charges. It seems to us that in a case involving shorter-distance charges higher than those to or from longer-distance points the carrier cannot rightfully claim justification for greater dissimilarity in the rates than may be indicated by the ascertained dissimilarity in circumstances and conditions."

The last paragraph of this quotation would appear quite clearly to support the contention of the plaintiff in error, as to the admissibility of the testimony suggested in the first assignment of error.

The unpreparedness of courts in this regard at the time the opinion was written (1898) was suggested by Mr. Justice Harlan in the case *Smyth v. Ames,* 169 U. S. 527, 42 L. Ed. 819, 18 Sup. Ct. 426, and wherein he said:

"What are the considerations to which weight must be given when we seek to ascertain the compensation that a railroad company is entitled to receive, and a prohibition upon the receiving of which may be fairly deemed a deprivation by legislative decree of property without due process of law? Undoubtedly that question could be more easily determined by a commission composed of persons whose special skill, observation and experience qualifies them to so handle great problems of transportation as to do justice both to the public and to those whose money has been used to construct and maintain highways for the convenience and benefit of the people."

The investigations and experience of the Interstate Commerce commission have resulted in a marked advance in the matter of intelligent judicial consideration of this question, until there has developed a tendency upon the part of the courts to permit in evidence any fact, circumstance or condition that may reasonably tend to throw light on the subject, treating the same from the standpoint of weight to be given to such testimony, rather than that of its admissibility.

Indeed, that commission is now regarded by the courts as technical authority in such matters, and its decisions are given great weight and quoted frequently with approval by the Supreme Court of the United States, and other federal courts.

It was said by Judge Taft in the case of *East Tenn. Ry, Co. v Interstate Commerce Commission,* 99 Fed. 64, 39 C. C. A. 425:

"It has been suggested that traffic managers are much better able, by reason of their knowledge and experience, to fix rates, and to decide what discriminations are justified by the circumstances, than courts. This cannot be conceded, so far as it relates to the Interstate Commerce Commission, which, by reason of the experience of its members in this kind of controversy, and their great opportunity for full information, is, in a sense, an expert tribunal."

Comparison of rates is a usual practice allowed by courts and the Interstate Commerce commission, as one of the matters proper for consideration in the effort to arrive at a conclusion as to questions of reasonableness or discrimination. To make such evidence of material value, however, there must be of necessity some similarity of circumstances or conditions. No rule as to what shall constitute such similarity as will permit consideration for such purpose seems to have been laid down by the courts or the Interstate Commerce Commission, when applied to a rate for the transportation of a specific commodity.

And even when applied to a system of rates between states, the Supreme Court of the United States had considered such facts for what they were worth, as in the very case cited, and relied on by the defendant in error, *Smyth v. Ames, supra,* where the court said:

"Comparisons, therefore, between the rates of two states are of little value, unless all of the elements that enter into the problem are presented. It may be true, as testified by some of the witnesses, that the existing local rates in Nebraska are 40 per cent higher than similar rates in the state of Iowa. But it is also true that the mileage earnings in Iowa are greater than in Nebraska. In Iowa there are 230 people to each mile of railroad, while in Nebraska there are but 190; and, as a general rule, the more people there are, the more business there is. Hence, a mere difference between the rates in two states is of comparatively little significance."

And so in the case of *Interstate Commerce Commis-*

*sion v. Railway Co.,* 120 Fed. 934, 57 C. C. A. 224, also cited and relied on by defendant in error, where the court after a consideration of the rates submitted in comparison, said:

"The evidence submitted to the commission, supplemented by evidence taken in the circuit court, is not sufficient for us to find affirmatively that the Hampton rates were in and of themselves unreasonable."

While in the first of these two cases the court held that the rates offered in comparison in that particular case were of little value, and in the other case, that the compared rates were insufficient for an affirmative finding, yet in neither case did the court hold that the testimony was not admissible, or that it did not have some value.

In fact no case is cited in the briefs, nor do we know of any from the United States supreme, or federal courts, or the Interstate Commerce Commission, where testimony as to relative rates had been excluded because it was not first shown that conditions were substantially the same as contended by the appellee. But the rule as illustrated by these cases, has been to consider the relative degree of similarity of conditions as going to the weight of the evidence.

The reason for this rule is apparent when we consider the extreme difficulty for a complainant to establish the unreasonableness of a rate in any case, and that so many of the elements entering into such consideration are peculiarly within the knowledge of the carrier.

The practice in this regard is illustrated by the language of the Interstate Commerce Commission in the case of *Cattle Raisers' Association v. M. K. & T. Ry. Co.,* 11 Interst. Com. R. 339:

"The defendants show many rates which are higher than the highest of those attacked by the complaint, but we are furnished with no testimony tending to show similarity of conditions and so far as we are informed such similarity does not exist."

And yet all these rates were introduced in evidence

and considered in that case. It was further said, that the uniform rule of the commission, as contended by the complainant in this case in its first assignment of error, was:

"In determining a reasonable rate the cost of performing the service, as has been just observed, is one element in that rate and the cost of movement is an important item in arriving at the entire cost of the service. The commission has uniformly held that it was proper to look into the divisions which carriers receive for the purpose of ascertaining the cost of movement since it must be assumed that the railroad would not transport freight ordinarily for less than the cost of the movement, but the division while material testimony for that purpose is not of necessity a standard of comparison by which to estimate a reasonable rate."

The Interstate Commerce Commission has from time to time adopted rules of practice, concerning the questions involved here. These have been followed in so far as it appears, without question by the Supreme Court of the United States. Among these rules, and in addition to those before mentioned, are the following cited in counsel's brief:

"A freight rate can seldom be considered in and of itself. It must be taken almost invariably in relation to, and in connection with, other rates."

The extent to which the commission has gone in this matter of comparison of rates, in its effort to arrive at a conclusion as to whether or not a rate is reasonable, is illustrated by the language used in *Dennison Light and Power Co. v. M. K. & T. Ry.*, 10 Interst. Com. R. 337, as follows:

"We have carefully examined the coal rates prevailing in different parts of the country for similar distances. The rate per ton of 2,000 pounds for a distance of 100 miles prescribed by the railroad commissions of Missouri, Illinois and Iowa is $1.00; that fixed by the Texas commission is .90 when the haul is over one railroad, and $1.05 when two or more railroads participate. While the Minnesota rates are not before us it is our

recollection that they do not exceed these figures much if at all. Upon the other hand some cases can be found where rates nearly as high as those in question are charged for a similar service, and under circumstances where such charges ought not to exceed, nor indeed equal those which this defendant might make here.''

This was a case involving the question of the reasonableness of a rate on the single article of coal, as here. The great difficulty to be met in determining the question of the reasonableness of a rate upon a single article, and the difference as to the relative value of facts to be considered as between such a case, and one wherein a system of rates is involved is well stated in the case of *Central Yellow Pine Association v. Central Illinois Ry. Co.,* 10 Interst. Com. R. 505, where it is said:

''The question of the reasonableness of a rate on a single article of traffic is one of almost insuperable difficulty. In *Smyth v. Ames* (Nebraska's freight rate case), 169 U. S. 466, 42 L. Ed. 819, 18 Sup. Ct. Rep. 418, there was involved an entire system of rates applicable to all traffic on the roads in the state of Nebraska and not the rate on a single commodity or article of traffic. In that case the Supreme Court held that the carrier is entitled to earn a 'fair return upon the value of that which it employs for the public convenience.'

''The value of the entire property of a road employed for the public convenience can shed but little, if any light upon the question whether the rate on a single article among thousands of articles of traffic yields its proper proportion of a fair return on that value. * * * While the Supreme Court has undertaken to point out certain elements to be considered in determining the reasonableness of an entire system of rates, it has not named any as shedding any light upon the reasonableness of a rate in a single commodity like lumber. It is evident that such elements are widely variant in the two cases. Where an entire system of rates is involved, the principal, if not the only question, is whether the revenue yielded by the rates on all traffic is a fair return on the

value of that which is 'employed for the public conveni-
ence'—a question, the determination of which, as we have
shown, can only have a very remote, if any practical,
bearing on the reasonableness of a rate on a single ar-
ticle of traffic.''

It will be seen that in the case of a single rate the
value of the entire property of the carrier, so important
in the case of a system of rates, becomes of little help in
reaching a conclusion, while other rates involving similar
shipments becomes of relatively greater importance.

In *Cotting v. Goddard,* 183 U. S. 79, 46 L. Ed. 92, 22
Sup. Ct. 30, which concerned the Kansas statute regulat-
ing the rates to be charged by stockyards, the principle
contended for by the plaintiff in error in his second as-
signment of error was approved. Justice Brewer, the
writer of the opinion, said:

''It was found, however, that the charges made by
the defendant were no greater (and in many instances
less) than those of any other stockyards in the country.
Nothing is stated to outweigh the significance of that
finding. While custom is not controlling, for there may
be a custom on the part of all stockyard companies to
make excessive charges, yet in the absence of testimony
to the contrary, a customary charge should be regarded
as reasonable and rightful.''

The plaintiff in the case at bar attempted to prove
the usual and customary rate for the same article and for
a like distance. ''Absence of testimony to the con-
trary,'' as used by Judge Brewer, can have no other
meaning than to concede the right and impose the duty
upon the defendant to make such showing, and to there-
by weaken or destroy the weight of the evidence as to
such custom, as the facts may justify.

Counsel for defendant in error cite *Hopper v. Rail-
way,* 91 Iowa 639, 60 N. W. 487, and *Anniston v. South-
ern Railway Co.,* 145 Ala. 351, 40 So. 965, to sustain their
contention. These cases do apparently support such po-
sition as to the second assignment of error. But the
rates there sought to be introduced were not confined to

hauls of the same or like distances as is the present in-
stance, nor of even relative length.  While in this case
the customary or usual rates offered were for relatively
the same distances of twenty to twenty-four miles and
upon the same commodity.  But if these cases can be said
to support the contention of defendant in error, we must
decline to follow them as being contrary to the great
weight of authority and likewise opposed to sound reason.
As against these cases, is that of *Halliday Milling Co. v.
La. & N. W. Ry. Co.*, 80 Ark. 536, 98 S. W. 374, which was,
as is the case at bar, a common law action to recover ex-
cessive rates charged and paid, and where it was held:

"The evidence of through rates and the division
thereof on both ends, of appellee's line was also admis-
sible.  It would be fair to deduce therefrom that the ap-
pellee would not agree to maintain rates which were not
fair and compensatory to itself, as well as reasonable for
the services rendered.  Of course, none of these matters
was controlling, and it was open to appellee (railway
company) to remove them by a weight of evidence or to
explain them, but the facts adduced were competent and
sufficient to go to a jury as tending to prove the matters
charged, and the case should have been sent to the jury,
unless the matters urged by appellee presented legal
obstacle."

It seems clear that comparative rates for the same
commodity and for like distance is a sufficient similar
service to permit the introduction thereof as testimony,
subject to the right of the carrier to show matters of dis-
similarity, if any there be, and as affecting the weight of
such evidence.

It was within the right of the defendant in this case,
to show any dissimilar circumstances, and conditions af-
fecting the rates offered by the plaintiff in comparison,
as would tend to lessen the weight of such testimony, as
for instance, if the expense of the transportation be
greater than that of the rate so offered in comparison;
the difference in cost of construction and operation, the
volume of business or any other matter which may rea-

sonably tend to effect the value of such compared rate, as evidence in the case.

For these reasons the judgment of the district court is reversed.

In department.

MUSSER, C. J., and GARRIGUES, J., concurring.