No. 9150.

ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, ET AL.
v. THE PUBLIC UTILITIES COMMISSION, ET AL.

1. REVIEW OF FINDINGS OF UTILITIES COMMISSION—*Jurisdiction of Supreme Court.* Under the statute the Supreme Court is authorized to set aside or modify the order of the Commission, if not supported by the evidence; but not to revise findings of fact upon conflicting evidence.

2. JURISDICTION OF COMMISSION. The local service of a Public Utilities Corporation doing business at Denver is controlled by the City, and not by the Utilities Commission. The local freight service, i. e., hauling between points within the switching limits of the Denver yards is therefore beyond the jurisdiction of the State Commission.

3. *Considerations Controlling the Commission.* In determining the reasonableness or unreasonableness of the carrier's charge, switching ought not to pay all the interest and taxes upon the terminal property, because the property is devoted to switching only in part, and is in fact part of the line. Each of the several uses to which the terminal and its facilities are devoted should bear a fair proportion of the terminal expense.

*En Banc.*

Mr. HENRY T. ROGERS and Mr. GEORGE A. H. FRASER, Attorneys for A. T. & S. F. Ry. Co., Mr. E. N. CLARK, Attorney for D. & R. G. R. R. Co., Mr. C. C. DORSEY and Mr.

J. Q. Dier, Attorneys for Union Pacific R. R. Co., Mr. E. E. Whitted, Attorney for C. B. & Q. R. R. Co. and C. & S. Ry. Co. and Mr. Howard S. Robertson, Attorney for Denver & Intermtn. R. R. Co., for petitioners.

Mr. J. W. Kelley, attorney for Respondents, Mr. Carl Whitehead and Mr. Albert L. Vogl, Attorneys for Consumers' League of Colo. et al., for respondents.

Mr. Justice Denison delivered the opinion of the court.

Certain shippers brought suit before the Public Utilities Commission to reform the switching rates in the Denver Railway Yards. The Commission reduced the rates and the Railway Companies seek to review that order under section 52 of the Act of 1913; S. L. 1913, pp. 497-498.

Under that section "the findings and conclusions of the commission on disputed questions of fact" are "not subject to review," but since the same section permits us, among other things, to determine "whether the order of the comfission is just and reasonable and whether its conclusions are in accordance with the evidence" we conclude that the intent of the legislature was to empower us to set aside or modify the orders of the commission if they were based on propositions of fact in support of which there was no evidence, but not to review findings of fact upon which the evidence was conflicting.

The complainants charged before the commission that the rates were unjust and unreasonable, which was denied. This issue was the principal matter of fact which was tried, all other questions of fact being important only so far as they bore one way or other on this point. The commission found that the rates were unjust and unreasonable, and fixed lower rates, partly on the ground that the line haul ought to bear a part of the cost of switching.

The carriers argue that the commission's findings are unsupported by the evidence, because there is no evidence from which it can be determined what the line haul ought to bear. It is true there is no direct evidence on that point but there are the switching rates in other terminals which were before the commission. The Interstate Com-

merce Commission has regarded such evidence as of weight. *Spiegle v. So. Ry.,* 25 I. C. C. 71; *Switching at Sheffield,* 26 I. C. C. 475; *Am. Creosote Works v. I. C. R. R.,* 18 I. C. C. 212; *Trans. Bureau v. G. & N. Ry.,* 30 I. C. C. 683. So this court, *Kindel v. C. & S.,* 57 Colo. 1, 139 Pac. 1105, and there was testimony that the industrial switching rates (*i. e.,* rates for transportation from one industry to another within the Denver Yards) were higher per ton than automobile drayage.

Upon the question of the sufficiency of the evidence we ought to consider that the facts concerning the line-haul, cost of operation, value of property devoted thereto, taxes, etc., are "peculiarly within the knowledge of the carriers" (57 Colo. 9), so they are not in as strong a position to urge the insufficiency of such evidence as has been procured against them as if all possible evidence as to the justness of the rates had been laid before the commission.

We cannot say that the findings are wholly unsupported by evidence, and therefore we cannot review them. We notice, however, some of the points made against them.

The railways claim that the rates fixed by the commission are unreasonable because they require the service to be performed at a loss, and they present figures, which are undisputed, except to an extent too small to affect the result, which show that the rates so fixed will not pay the cost of the operation of switching, plus six per cent on the value of the property devoted to switching, plus taxes thereon.

The commission, however, takes the ground that the switching does not elsewhere, and ought not to, pay all the interest and taxes on such property but that the line haul ought to bear a part of that burden, because the property devoted to switching is a part of the terminal facilities in use with and really a part of the line itself.

In this we think the commission is right. No line could be operated without some terminal facilities, even though no switching were done there except just enough to care for the rolling stock and make up trains. In re Louisville &

Nashville Rates, 26 I. C. C. 20; Lighterage Charges, 35 I. C. C. 47; Switching Charges, Milwaukee, 32 I. C. C. 509; *Steenerson v. Great Northern*, 69 Minn. 353, 72 N. W. 713; *Billings Chamb. of Commerce v. C. B. & Q.*, 19 I. C. C. 71.

The petitioners urge that the rule that the line haul should produce part of the revenue due to the terminal property used for switching compels the companies which own the terminal to do switching for foreign companies at less than cost. We do not think so. Might it not as well be said that the Union Station is maintained and furnished at less than cost (viz. gratis), to the through passengers from foreign connecting lines?

It is not at less than cost if the terminal is considered as partly belonging to the main line and operated and maintained partly by the revenue from the line haul. The figures presented by the railways show that even before the commission's reduction, according to their present method of computation, they were switching at less than cost. They themselves, then, have not heretofore followed the rule they now urge upon the commission and this court.

We have recently held that the local service of a public utility corporation is controlled by the city and not by the Public Utilities Commission. *Denver v. Mtn. States Telephone & T. Co.,* 67 Colo. 225, 184 Pac. 604.

The local freight service, that is, hauling between points within the switching limits of the Denver yards, is called "industrial switching." (If our understanding is correct, it constitutes a small percentage, say ten per cent., of the switching in the Denver yards.)

By force of the above decision, then, that part of industrial switching which is carried on between points within the City and County of Denver is beyond the jurisdiction of the State Commission, and as to it the order of the Commission should be reversed.

Neither side suggested this point either to the commission or to this court; but, because it is a jurisdictional question, we deem it proper to notice it.

The order of the Commission, so far as it relates to industrial switching between points within the City and County of Denver, should be reversed. So far as it relates to other matters, it should be affirmed.

Teller, J., dissents as to part *reversed.*

Scott, J., specially concurring.

I agree with the conclusion reached in the opinion that the commission had no jurisdiction in the premises, because of the recent decision in the case cited. I do so for the sole reason that I am bound to accept that decision as the law in this state, for I am as strongly convinced as I was at the time that the decision was rendered, that it is in direct conflict with every other of the very many decisions of the state and the United States courts. The error in the conclusion there reached constitutes the gravest injustice to the people and the public welfare, in my judgment, and I am willing and ready to vote to overrule it at the first opportunity. This case illustrates but one of the many wrongs that the decision must enforce against the public.

Here the justice of the order of the commission reducing the rates to be charged by the carriers is conceded, and yet the public are to be denied relief, for confessedly, there can be no other practical remedy, and the people of the cities of this state operating under the Twentieth Article of the Constitution are thus left at the mercy of the carriers.

It is inconceivable that the people of this state, either by constitutional or statutory enactment could have intended such gross discrimination and injustice.

### On Motion for Rehearing.

*En Banc.*

Denison, J.

It may be admitted to be true, as the United States Supreme Court says in 186 U. S. 320, 46 L. Ed. 1182, 22 Sup. Ct. 824, that if the terminal charge is reasonable, the fact that it and the line haul together are unreasonable will not justify a reduction of the terminal charge.

What we are trying to do here, however, is to determine whether the terminal charge is reasonable, and there is nothing in the above admission to prevent the consideration of the line haul charge in determining the terminal charge.

It seems manifest that each of the several uses to which the terminal and its facilities are put should bear a fair proportion of the terminal expense.

The uses to which the terminal and its facilities are put are at least three—

1.   Industrial switching.

2.   Reciprocal switching.

3.   Other uses necessary to the line haul operation.

Maintenance, interest, taxes and a reasonable net revenue must be yielded by the terminal.

The proposition of the carriers is that 1 and 2 should yield enough to cover them all.

Why should certain switching alone be required to pay all the expense and produce a reasonable revenue on this terminal when the line haul is using it too and the companies may be and presumably are (186 U. S. 337) charging for that use?   The question answers itself.

But the companies insist that the question of the line haul charge was not before the commission, that therefore they were not to be expected to and did not offer any evidence as to that charge.

Since, as we have shown above, the line haul charges were relevant to the question of the reasonableness of the reciprocal switching charges, the companies might and ought to have offered proof as to the former.

So far as the commission's findings of fact are concerned, on the evidence before it, we have seen that we cannot review them.   Rehearing should be denied.