HOPPER & MCNEIL v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

91 639
114 206

91 639
f125 532

**Carriers: Rate Schedules: Taking Effect.** Under Act, April 5, 1888, rates established, remain in force until a change in rates is published as such act requires.

**Same: Injunction.** An injunction by a federal court restraining the commissioners from publishing and putting a schedule into effect, is no defense, when, owing to the provisions of section 17, chapter 28, Twenty-second General Assembly, the law has already made the schedule effective, and without publication, at the time the injunction is granted.

Schedule as Evidence: Certificate by Secretary. A rate schedule which the secretary of the commission, as such, under its seal, certifies to be a true copy, is admissible in evidence under the Act of April 5, 1888, which admits such copy "without further proof," if certified by the "commissioners." Where the identity of the schedule is not questioned, a defect in the form of its certificate is not material.

Treble Damages: Interest can not be recovered when a statute provides for trebling actual damages.

Practice on Appeal. But that point can not be raised on appeal when no attention was called to it on motion for new trial, though there was a general exception to an instruction allowing such interest.

Same: Unconstitutionality of statute in that it deprives of jury trial can not be first urged on appeal.

Practice: Evidence. That rates fixed by commissioners are unreasonable may not be proven by showing what carriers in other states charge, where there is no showing that conditions are similar.

SAME: CUMULATIVE EVIDENCE: REJECTION. Such rejection is not prejudicial where the testimony sought to be strengthened is not disputed.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

SATURDAY, OCTOBER 6, 1894.

ACTION to recover for overcharges upon freight. Verdict and judgment for plaintiffs. Defendant appeals.—*Affirmed.*

*J. W. Cary, G. P. Cary,* and *Taylor, Shull & Farnsworth* for appellant.

*Strong & Owen* for appellees.

KINNE, J.—I. As finally amended, the petition charged that between July 10, 1888, and January 29, 1889, plaintiffs shipped over defendant's road fifty-seven cars of lime from Maquoketa, Iowa, to Sioux City, Iowa, and that they had been compelled to pay as freight therefor the sum of eight hundred and thirty dollars and eighty-two cents in excess of the legal rate as fixed by the railway commissioners of this state;

that the rate charged was unreasonable, unjust, and extortionate, and that the rate fixed by said commissioners was just and reasonable; that a demand in writing was made upon defendant to refund the damages sustained by plaintiffs by reason of said illegal charges. Said demand was made more than fifteen days prior to the commencement of this action. The amended and substituted answer is in three counts. The first count admits the corporate capacity of the defendant; that it is engaged in operating a railway; that, between the times stated in the petition, plaintiffs shipped over defendant's line of road the lime stated, for which they paid the sum claimed. Denies that any legal rate was fixed by the railway commissioners, and says that the rate fixed by them was not just or reasonable. Denies that the plaintiffs were overcharged for transporting said lime. Denies all allegations not before admitted or denied. In a second count, it is averred that said railway commissioners attempted to make a schedule of rates for the shipment of lime, but alleges that said schedule was never published as required by law, so as to become obligatory upon defendant; that on June 28, 1888, application was made to the United States circuit judge of the eighth judicial circuit for an injunction restraining said commissioners from putting in force or publishing said schedule, and an injunction issued in accordance with said application, which remained in force until long after the times mentioned in the petition, and said schedule was never published or in force. In a third count, it is alleged that on November 3, 1888, said board of railway commissioners, pretending to act under the act of the Twenty-second General Assembly, approved April 5, 1888, attempted to change the classification of rates of freight in Iowa so as to reduce the compensation for transporting lime in car-load lots, and made an order that such change should take effect

December 3, 1888, and were about to proceed to publish the same, as required by the act to make it obligatory, and that on November 26 defendant filed an amendment to its bill, asking that said commissioners be restrained from publishing and putting in force said change of rates, and said circuit judge made an order restraining said commissioners from putting said rates in force until a hearing, and that on February 2, 1889, on said hearing, the restraining order was set aside; that said schedule and classification of rates were never published, nor in force or effect, during the times stated in the petition. Plaintiff demurred to the second and third divisions of the amended and substituted answer. To the second division, because the facts stated did not constitute a defense: *First.* Because the act authorizing the fixing of a schedule of reasonable maximum rates did not contemplate or require said schedule to be published in order that it should take effect. *Second.* That the answer shows that the commissioners, acting under the direction of the law, made a schedule of reasonable maximum freight rates to be charged by the lines of transportation in the state of Iowa; that the law provides that the schedule, when made, shall in any event go into effect within sixty days after the taking effect of the statute, and the schedule took effect at the expiration of the sixty days, independent of any publication, and regardless of said injunction. *Third.* That the publication of the schedule is a formal matter, and intended for the benefit of the railway companies and defendant, and is not essential to its validity and operation; that said answer shows that publication was prevented by the wrongful act of defendant, and through no fault or neglect of the commissioners, and defendant is estopped from disputing the validity or operation of said schedule. To the third division, because: *First.* The act of the legislature authorizing the commissioners to change and revise schedules does not con-

template or require that notice of said change shall be published in order for it to take effect and become binding upon defendant. *Second.* That said answer shows that the publication of said revised schedule was prevented by the wrongful act of defendant, and it is estopped from disputing its validity and operation. The court sustained the demurrer to the second count, and overruled it as to the third count, of the answer. Thereafter defendant, in a fourth count, averred that the railway commissioners never made a schedule of rates, or fixed a rate for the transportation of lime in car load lots, as stated in the petition, and denied that it had overcharged plaintiffs.

II.   Error is assigned upon the action of the court in sustaining plaintiffs' demurrer to the second count of defendant's answer. When this opinion was prepared, there was nothing in the record showing that any exception to the ruling had been taken. On September 3, 1894, a second amendment to the abstract is filed, wherein it appears that as a matter of fact the exception was properly taken. This amendment was filed a long time after the case had been fully argued and submitted, and if the decision of the question raised by the sustaining of the demurrer could work any prejudice to appellees, we should in view of the tardy presentation of this record be inclined to disregard the point made. For reasons stated in the fifth division of this opinion, we must hold that the demurrer was properly sustained.

III.   It is said that as the district court overruled plaintiff's demurrer to the third count of defendant's answer, and as no reply was filed to said count, the facts therein pleaded must be taken as admitted. It is also claimed that the allegations of said count were sustained by the testimony. As to the latter claim, we do not find that the record of the federal court was in evidence. The only reference in the record to this change of classification and adoption of new rates is

in the testimony of commissioner Smith, who said: "There was a very material change made in the classification. The Illinois classification, originally adopted, was supplanted by the western classification. This change was made prior to the twenty-third of February, 1889." It does not appear from the evidence that the change was made before plaintiff's shipments ceased, which was on January 29, 1889. All that is shown is that the change was made prior to February 23, 1889. The pleading charges that the commissioners *attempted* to make this change on November 3, 1888, and to go into effect December 3, 1888, and that the commissioners were enjoined until February 2, 1889, from publishing the schedule or putting the rates into effect. If, then, it be conceded that by failing to reply to this count, its allegations are admitted, it simply amounts to an elimination of the attempted changed schedule and classification from the case. Not being an original rate, we presume the court held that, to give it force and effect, it must be published as required by law. It was not published, and hence was not in force. The attempted change in the schedule and rates was, it appears, not consummated during the time the plaintiff's shipments were being made. Conceding the full force of every allegation in this count, and that they are admitted by reason of the failure to reply thereto, what is the situation? Manifestly the attempt to change the former classification and schedule, by reason of the failure to publish the same, was not fully consummated at any time during the continuance of plaintiff's shipments, and hence the former schedule and classification remained in force. It is urged with great force and ability that the commissioners adopted the western classification, and changed the rates, and that that had the effect of doing away with their former action in making the classification and schedule. We have said that the evidence

fails to show that such change, if any, was made prior to or while the plaintiff's shipments were being made. The pleading, on its face, shows that the change was attempted, but not consummated, during the period in controversy in this suit.   We hold that there could be no change in the rates and classification which would be effective until the publication thereof as required by law; and, until the law was complied with in that respect, the former rates and classification stood in full force.   There was then no error in not limiting plaintiff's recovery, if they were entitled to recover, to the shipments made prior to November 3, 1888,—the time when it is charged that the attempt was made to change the classification and schedule.

IV.   Plaintiff offered in evidence the schedule of reasonable maximum rates of charges for transportation of freight in Iowa, and classification of freight adopted by the railroad commissioners, to which was attached the following certificate: "Certificate.   Iowa Board of Railroad Commissioners. It is hereby certified that the above and foregoing schedule of the railroad commissioners of the state of Iowa is a true copy of the schedule prepared by them, June 14, 1888, for the said railroad companies and corporations therein named, and that notice of making the same has been published as required by law.   Witness my hand and the seal of the board of railroad commissioners this sixth day of February 1801. By order of the board.

[L. S.]                         "W. W. AINSWORTH,

"Secretary of the Board of Railroad Commissioners of Iowa."

The date "1801" is evidently a typographical error. To this offer, defendant made the objection that there was no certificate of the commissioners thereto that it is their schedule, or that it has been published as required by law; that it does not appear that there was a

time fixed for the schedule to go into operation; that there was no proof that anything had been done under the law; that it was necessary that a certificate made by the commissioners should be attached to the schedule, in order to make it *prima facie* evidence under the statute. The objections were put in various ways, but all attacked the sufficiency of the certificate. The objections were all overruled, and defendant excepted.

4    The statute provides: "All such schedules, so made, shall be received and held in all suits as *prima facie* the schedule of said commissioners without further proof than the production of the schedule desired to be used as evidence, with a certificate of said railroad commissioners, that the same is a true copy of the schedule prepared by them for the railroad company or corporation therein named, and that notice of making the same has been published as required by law." Acts, Twenty-second General Assembly, chapter 28, section 17. It will be observed that the certificate is in the form prescribed by the statute. Indeed, it follows the wording of the statute, and is sufficient in that respect. The real ground of attack on this certificate is that, to be in compliance with the law, it should be signed by each of the commissioners. The legislature had power to determine what form of a certificate should be sufficient to warrant the introduction of the schedule in evidence. It prescribed the form, and it matters not that it may be other than that generally required. Rules of evidence may be changed at the will of the lawmaking power, so long as the rights of parties are preserved to them. They pertain to the remedy, they are no part of the contract, and defendant can not be heard to complain, so long as no right to which it is entitled is taken away or unduly impaired. *Railway Co. v. Jones*, 37 N. E. Rep. (Ill. Sup.) 247.

Is the certificate defective because not signed by each of the commissioners? The law requires that the

secretary shall be selected by the board, and he must have the qualifications of a commissioner. McClain's Code, sections 2029 and 2036. He is required to take an oath and give a bond. *Id.*, section 2037. The board of commissioners are required to have a seal, which the law provides "shall be judicially noticed." Section 21, chapter 28, Acts, Twenty-second General Assembly. This seal was attached to or impressed upon this certificate. While it would have been proper for the commissioners to have signed the certificate, yet, in view of the provisions of the statute above referred to, it seems to us it would be going a long way in search of a technicality to say that such a certificate, signed by the secretary of the commissioners, in his official capacity, by their order, and having the seal of the board attached, which we are required to notice, is not in law "a certificate of said railroad commissioners." The certificate is for the purpose of identifying the schedule as being the schedule of the commissioners. It does not prevent other means of identification. It is provided to the end that other means need not be resorted to unless a party so elects. The certificate does not make the schedule *prima facie* evidence, but, as we have said, is only for the purpose of establishing *prima facie* that the document offered is the schedule of the commissioners. The schedule made in conformity to law is, without more, *prima facie* evidence; but it must be shown by the certificate or otherwise that it is a true copy of the schedule adopted by the commissioners. In this view, even if the certificate had been informal or insufficient, the identity of the schedule itself not being questioned, the form of the certificate would be immaterial. *R'y Co. v. Jones*, 37 N. E. Rep. (Ill. Sup.) 247.

V. It is contended that the classification and schedule adopted by the commissioners in 1888 were

not in force during the time plaintiffs' shipments were being made; that the federal court had enjoined the board of railway commissioners from publishing notice and putting the rates into effect. If the classification and schedule did not become operative and effective until publication was made by the commissioners, it is clear that they were not in force until after the dissolution of the injunction in February, 1889, as, until that time, the board was enjoined from publishing the notice. But section 17 of chapter 28, Acts of the Twenty-second General Assembly, expressly provides, "And in any event the original schedule of rates and classification of freights on all lines of railroads in Iowa shall be fixed and shall go into effect within sixty days from the taking effect of this act." The schedule and classification was made within the sixty days after the act took effect, and this provision of the law qualifies and controls the earlier provision regarding the publication of notice. This was an original schedule, and as to it the law was explicit that it should go into effect within the sixty days whether notice was given or not. By virtue, then, of the provisions of the law itself, the schedule and classification, being the original one, went into effect without any further action on the part of the commissioners. The legislature had so declared, and its right so to do can not be doubted. The fact that the commissioners were enjoined from publishing the notice, which was intended for the benefit of defendant and other companies to be affected by the classification and schedule, and the fact that the railroad companies did not regard the schedule and classification as being in force, if such was the fact, can not have the effect of repealing or nullifying an express provision of the law, fixing a time at which, in any event, said classification and schedule should go into effect. As the classification and schedule went into effect without further action on the part of the commissioners, and as the injunction

was directed to them, it was without force to defeat the operation of the schedule and classification. It is proper to say that counsel for appellant seem to place much reliance upon matters which do not appear in the record, and therefore can not be considered..

VI. Error is assigned upon the ruling of the court in excluding testimony offered by defendant as to the rate of charges made by other railroad companies for similar services, and in excluding testimony as to the value of defendant's road. Evidence was admitted as to the charges made by defendant in other states, but the court excluded evidence as to rates charged by other companies in other states and other roads in this state. The questions asked touching these matters were very numerous, and can not all be set out here. In each case, however, the offered testimony was properly excluded because it was not shown that the circumstances and conditions were substantially the same as to the road inquired about, as in the case at bar. One or two questions will serve to illustrate: "Will you state to the court the rates that were being charged at that time in the different states of the northwest on the different roads?" "State what was the charge of the different roads in Iowa for the transportation of lime in 1888?" It requires no argument to show that the charges for carrying a like commodity on another road in Iowa or elsewhere would have no tendency to show the reasonableness of defendant's charges for a shipment of lime from Maquoketa to Sioux City, Iowa, unless the circumstances which must be taken into consideration in fixing the rate inquired about are substantially the same as those applying to the road in controversy. The proper foundation for the introduction of such evidence, even if admissible, was not laid. As to the exclusion of evidence as to the value of defendant's road, while much evidence of that nature was

excluded, still there was evidence admitted, without objection, showing its value to be thirty thousand dollars per mile. As there was no evidence whatever to the contrary, the ruling out of other evidence to the same effect can not be considered error which worked to defendant's prejudice.

VII. In the fourth division of his charge to the jury the court said: "And, under the statute to which your attention has been directed, this schedule is presumptive evidence that such rate is a reasonable and just one, but it is not conclusive; and it is for you to say, from all the evidence before you, what is a just and reasonable rate for transporting lime, in car-load lots, from Maquoketa to Sioux City, Iowa, a distance of three hundred and fifty miles on defendant's railroad." It is said that this was error; that the statute making the commissioners' rates *prima facie* evidence of reasonableness is unconstitutional; that it impairs the right of trial by a jury. It does not appear that these objections were made to the court below, and the rule is too well settled to need a citation of authorities that such questions, if made for the first time in this court, can not be considered.

The court directed the jury, in case it found for the plaintiffs, to multiply the sum found as actual damages by three, and to compute interest thereon, and the total sum so made would be the amount of their verdict. In so far as the instruction authorized the jury to add interest to their verdict, it was erroneous. The statute in these cases fixes the measure of recovery, and damages must be assessed as therein provided. No provision is made for interest, and, as the law allows juries to fix the amount of their verdict at three times the amount of the actual damage sustained, there is no reason to suppose that the legislature intended a further sum to be allowed as interest on said sum. *Brentner v. Railway Co.*, 68 Iowa, 534,

23 N. W. Rep. 245, and 27 N. W. Rep. 605.   Defendant is not, however, in position to avail itself of this error of the trial court.   This matter was not properly called to the attention of the district court.  If it had been, it might have been corrected. There was an exception noted to the instruction when given, but no mention was made of this particular error, either then or in the motion for a new trial.   It is but fair to trial courts that such errors be particularly brought to their attention, and it is not enough that they may be embraced within a general exception to an instruction.   The motion for a new trial was grounded in part upon the claim that the damages were excessive, but this might relate as well to other reasons as because of the improper allowance of interest.   The position of the trial court is a delicate and trying one, and every reasonable opportunity should be afforded it to correct its errors.

VIII.  The jury specially found that the rate charged plaintiffs was unjust and unreasonable; that the rate fixed by the commissioners was just and reasonable, and that plaintiffs made a demand in writing upon defendants for a refunding more than fifteen days before they brought this suit.  It is urged that these findings, in so far as they relate to the reasonableness of the rates, were not warranted by the testimony.  The evidence was conflicting, but there was ample to sustain the verdict and findings complained of.   We are not authorized to set aside a verdict or findings which are properly supported by the evidence.

We have considered all the questions properly raised and argued, and find no reversible error.   The statute allowing a recovery in such cases provides that this court shall allow a reasonable sum as counsel or attorney's fees, to be taxed and collected as a part of the costs in the case.  Acts, Twenty-second General As-

sembly, chapter 28, section 9. The sum of two hundred dollars is therefore allowed to plaintiffs' attorneys for their fees in defending in this appeal. AFFIRMED.