## INSURANCE CO. OF NORTH AMERICA *et al.* v. WELCH, *Ins. Com'r, et al.*

No. 7581.   Opinion Filed November 9, 1915.

Rehearing Denied January 4, 1916.

(154 Pac. 48.)

1. **CONSTITUTIONAL LAW — Due Process — Equal Protection— Power to Contract—Statutory Regulations—State Insurance Board.** Chapter 174, Sess. Laws 1915. p. 340, creating a State Insurance Board and providing for the regulation and control of rates of premiums on insurance, and for other purposes therein specified, is not in violation of any rights of the companies affected thereby doing business in this state secured to them by the Fourteenth Amendment to the Constitution of the United States, and is within the legitimate police power of the state.

2. **INSURANCE—Power to Regulate—State Insurance Board.** The business of insurance affected by the provisions of said act is of such nature and affected with such a public interest as to justify legislative regulation thereof and of the rates charged by the companies engaged in such business.

3. **CONSTITUTIONAL LAW — Legislative Power — Delegation— State Insurance Board.** It is within the power of the Legislature to create a State Insurance Board, and to require every fire, tornado, and plate glass insurance company and every insurance company granting insurance against the liability of employers to file with said board a schedule of rates charged by it for such risks, and to prohibit a change in such rates except after ten days' notice to said board of such contemplated change, and authorizing said board, when it shall determine that any rate is excessive or unreasonably high, or that said rate is inadequate to the safety or soundness of the company granting the same, to direct said company to file a higher or lower rate, commensurate with the risk, and further requiring that in every case the rate shall be reasonable, when provision is made for a review of the orders of said board by the courts.

4. **INSURANCE—Statute Creating State Insurance Board—Validity.** Section 174, Sess. Laws 1915, p. 340, is not violative of the provisions of sections 22, 23, and 24 of article 6 of the Constitution, creating the Insurance Department and the office of Insurance Commissioner, nor does such act deprive the Insurance Commissioner of any powers or duties conferred upon him by the Constitution.

5. **CONSTITUTIONAL LAW—Construction—Grant of Powers— Constitutionality of State Insurance Board.** The grant to the Legislature of specific authority by section 19, art. 9, of the Constitution to vest in the Corporation Commission additional powers and duties in connection with the visitation, regulation, or control of corporations, or with prescribing and enforcing rates and charges to be observed in the conduct of any business, where the state has the right to prescribe the rates and charges in connection therewith, does not deprive the Legislature of its power to regulate and control such matters or to create the State Insurance Board and vest it with the powers enumerated in said chapter 174, Sess. Laws 1915.

6. **CONSTITUTIONAL LAW—Constitutionality—Determination by Courts.** This court will not pass upon the constitutionality of an act of the Legislature or of any of its provisions until there is presented a proper case in which it is made to appear that the person complaining is entitled to the benefits of said act or about to be subjected to some of its burdens or penalties.

7. **CONSTITUTIONAL LAW—Equal Protection—Insurance—Statutory Regulations—State Insurance Board.** Exempting domestic mutual fire insurance companies and reciprocal associations and mutual insurance companies and reciprocal associations doing business in this state from the provisions of said act does not

**622**      SUPREME COURT OF OKLAHOMA.

Insurance Company of North America et al. v. Welch, Ins. Com'r, et al.

render such legislation invalid as to other insurance companies, as denying them the equal protection of the laws.

8. **STATUTES—Title and Subject-Matter—State Insurance Board.** The title of the act is sufficiently comprehensive to embrace the various provisions thereof.

9. **INJUNCTION—Adequate Remedy at Law—Right of Appeal— Order of State Insurance Board.** Provision having been made for an appeal to this court from any regulation, order, or rate adopted by said board, said provision gives a speedy and adequate remedy, and an injunction will not lie to restrain said board from proceeding in a matter within its lawful jurisdiction.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

Action by the Insurance Company of North America and others against A. L. Welch, Insurance Commissioner, and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

*Burwell, Crockett & Johnson,* for plaintiffs in error.

*S. P. Freeling,* Atty. Gen., and *J. H. Miley* and *Smith C. Matson,* Asst. Attys. Gen., for defendant in error.

HARDY, J.    Plaintiffs in error brought suit in the district court of Oklahoma county, on behalf of themselves and others similarly situated, against defendants in error, seeking to enjoin defendants in error, as the State Insurance Board, from enforcing the provisions of an act of the Legislature, referred to as House Bill No. 70, being chapter 174, Sess. Laws 1915, p. 340, which created a State Insurance Board, prescribed the powers and duties thereof, and prescribed certain regulations in reference to the conduct of insurance within this state. The parties will be referred to as they appeared in the trial court.

Plaintiffs alleged that the Insurance Company of North America was an insurance company duly incorporated under the laws of the State of Pennsylvania, and that it had complied with all the laws of this state, and was licensed to do business within the state during the year 1915; that plaintiff Ludlow was its general agent, having charge of its business within this state, and that plaintiff McDaniels was the local agent of said company in the city of Norman, Okla. The petition then alleged the passage of House Bill No. 70, creating the State Insurance Board, to be composed of the Insurance Commissioner, Fire Marshal, and a third member to be appointed by the Governor, and that in pursuance thereof the Governor had appointed Hon. W. R. Samuels as secretary of said insurance board, which board had thereafter organized and promulgated certain rules and regulations for the government of said board and the insurance companies and their agents doing business within this state. The case came on for hearing on the application of plaintiffs for a temporary injunction, on the 7th day of August, 1915, at which time evidence was introduced, when the court denied the temporary injunction, and plaintiffs bring error.

The petition attacks the validity of said House Bill No. 70 on the ground that it is in violation of the Constitution of the United States and the Constitution of this state, an unwarranted interference with the power of plaintiffs to contract, a deprivation of property without due process of law, and a denial of the equal protection of the laws. Counsel in their brief and oral argument concede the right of the state to regulate the rates charged by insurance companies, but do not concede the validity of other regulations prescribed by the act.

The power of the state to regulate the business of insurance has frequently been before the courts in recent years. This question was presented to the Circuit Court of the United States for the District of Kansas in the case of *German Alliance Ins. Co. v. Barnes* (C. C.) 189 Fed. 769. The Legislature of Kansas had passed a law conferring upon the Superintendent of Insurance of that state authority very similar to the authority conferred upon the State Insurance Board by House Bill No. 70. The Kansas act was in many respects similar to House Bill No. 70, and some of its sections were identical with those of the latter act. The plaintiff in that case sought to enjoin the Superintendent of Insurance from proceeding in or enforcing the provisions of said act, and urged as a reason therefor that said act was an interference with the right of plaintiff to contract, and that it was an appropriation by the state of private property within the prohibition of the Fourteenth Amendment, and that it was beyond the police power of the state to regulate the rates charged by insurance companies doing business in that state. This contention was denied by the court, and the injunction refused; the court being of the opinion that said act was not subject to the objections enumerated. The case was appealed to the Supreme Court of the United States, and in *German Alliance Ins. Co. v. Lewis,* 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189, the judgment of the Circuit Court was affirmed, and Mr. Justice McKenna, in a very learned opinion, set at rest the authority of the state in the exercise of its police power to regulate the business of insurance and the rates and charges exacted by insurance companies in the conduct of their business.

In *Citizens' Insurance Co. v. Clay* (D. C.) 197 Fed. 435, in the United States District Court for the Eastern District of Kentucky, an act of the Legislature of that state was under review which created a State Insurance Board empowered to require certain data to be furnished by companies doing business in the state, and therefrom to establish rates for such companies. The court there stated the principle that the business of insurance was one which from its character was of a quasi public nature and subject to reasonable state regulations, and that said act was not violative of the federal Constitution as depriving plaintiff of its property without due process of law, or denying it the equal protection of the laws.

The Supreme Court of Nebraska, in *State ex rel. Martin v. Howard,* 96 Neb. 278, 147 N. W. 689, following the opinion of the Circuit Court for the Eastern District of Kansas and the Supreme Court of the United States in *German Alliance Ins. Co. v. Lewis, supra,* held that an act of the Legislature of that state regulating the business of insurance was valid.

In *Welch v. Maryland Casualty Co.,* 47 Okla. 293, 147 Pac. 1046, this court said:

"That the state, in the exercise of its police power, may fully and completely regulate the insurance business is no longer a debatable question. This proposition is too well settled to require citation of authority to sustain it."

The power of the state, then, to regulate the business of insurance and the rates to be charged by the companies engaged in that business seems not to admit of doubt, and it cannot be successfully urged that it is not within the police power of the state to prescribe reasonable regulations affecting this business.

The act is further challenged because the powers therein enumerated are conferred upon the State Insurance Board, and because, such powers being legislative in their character, the Legislature may not delegate them. We recognize the principle that it is not within the power of the Legislature to delegate its legislative functions or its exclusive authority to declare what the law shall be, but it is generally established at this time that the Legislature may enact a law which is complete in itself, having for its aim the accomplishment of some general public purpose, and may, in order to secure the just and equitable operation of the law thus enacted, delegate the power within definite and valid limitations to make necessary investigations, determine preliminary facts, and prescribe suitable rules and regulations intended to accomplish the operation and enforcement of the law in accordance with the express legislative will. A familiar illustration of the exercise of this power is where the Legislature enacts a law prescribing that rates for services by railroads and other common carriers shall be reasonable, and creates a board or commission with power to investigate and fix rates for such services, subject to review by the courts. The reasoning of the opinions is usually based upon the extensive and complex character of the business, involving a multitude of detail, and requiring expert knowledge to conduct intelligently the numerous separate investigations, and the necessity for frequent changes and adjustments in the rates and services, which would render it impossible for the Legislature to acquire the necessary information and to fix just and reasonable rates applicable to the varying conditions and circumstances. Direct legislative control has been tried and abandoned

because found impossible, for the reason that the business of the common carrier has grown and extended and became such a large and indispensable factor in our complicated social and economic life that the cumbersome methods of direct action is no longer adequate or possible. *Railroad Com. Cases,* 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636; *Reagan v. Farmers' L. & T. Co.,* 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; *Ga. Railroad et al. v. Smith et al.,* 70 Ga. 694; *Hopper et al. v. C., M. & St. P. Ry. Co.,* 91 Iowa, 639, 60 N. W. 487; *Railroad Commission v. H. & T. C. Ry. Co.,* 90 Texas, 340, 38 S. W. 750; *Chicago, B. & Q. R. Co. v. Jones,* 149 Ill. 361, 37 N. E. 247, 24 L. R. A. 141, 41 Am. St. Rep. 278; *State ex rel. Railroad & Warehouse Comm. v. M. & St. P. Ry. et al.,* 80 Minn. 191, 83 N. W. 60, 89 Am. St. Rep. 514; *State v. Atlantic Coast Line Railroad Co.,* 56 Fla. 617, 47 South. 969, 32 L. R. A. (N. S.) 639.

In recent years the business of insurance has grown to such an extent that its ramifications extend to practically every phase of business in the commercial world, and the necessity for regulation of the business has become more and more apparent, until legislation having that purpose was enacted and brought into review before the courts, with the result that the right of the state to regulate the same has been finally determined. The difficulty of direct legislative regulation is present in the insurance business to the same extent as in the business of common carriers. To illustrate: In order to properly prescribe rates for the business of fire insurance that will be just and reasonable, it becomes necessary to know the location of the property, the character of the neighborhood in which it is situated, whether city, town, or country, and, if in a town or city, the fire protection

which has been provided, the extent of the water supply, and other physical conditions. It is necessary to know the character of the property to be insured, and, if a building, the size, material of which it is constructed, the manner of its construction, the character of the occupancy, the construction and location of adjacent buildings, the occupancy and contents thereof, and the manner in which the contents are stored. All these matters enter into a consideration of the question as to what rates are just and reasonable. It is thus seen that it would be a physical impossibility for the Legislature, which ordinarily meets but once in two years, and sits for a limited period of time, and is composed of members from all of the varying walks and occupations of life, to make the necessary investigations, ascertain the necessary facts, and prescribe rates that are just and reasonable and rules and regulations that would apply to the varying conditions and circumstances, which would necessarily have to be considered in the proper exercise of its powers in this regard. So legislation which has delegated this power to a board or other officials, in connection with proper statutory enactment, has been upheld. *German Alliance Ins. Co. v. Barnes, Supt. of Ins.* (C. C.) 189 Fed. 769; *German Alliance Ins. Co. v. Lewis,* 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; *Citizens' Ins. Co. v. Clay et al.* (D. C.) 197 Fed. 435; *State ex rel. Martin v. Howard,* 96 Neb. 278, 147 N. W. 689.

Plaintiffs insist that House Bill No. 70, in so far as it attempts to confer upon the State Insurance Board power to supervise and regulate rates of insurance and the granting and revoking of insurance agents' license and power to determine the form of policy that should

be used and to cancel licenses of the companies and agents, is void because said act is in conflict with sections 22, 23 and 24 of article 6 of the Constitution, which are as follows:

"Sec. 22. *Insurance Commissioner—Duties.*—There is hereby established an Insurance Department, which shall be charged with the execution of all laws now in force, or which shall hereafter be passed, in relation to insurance and insurance companies doing business in the state.

"Sec. 23. *Insurance Commissioner—Term—Qualifications.*—There shall be elected by the qualified electors of the state, at the first general election a chief officer of said department, who shall be styled 'the Insurance Commissioner,' whose term of office shall be four years: Provided, that the first term of the Insurance Commissioner, so elected, shall expire at the time of the expiration of the term of office of the first Governor elected. Said Insurance Commissioner shall be at least twenty-five years of age and well versed in insurance matters.

"Sec. 24. *Insurance Commissioner—Additional Duties.*—The Insurance Commissioner shall give bond, perform such duties, and possess such other qualifications as may be prescribed by law."

The argument is made that, because section 23 provides for the election of an Insurance Commissioner, who shall be "the chief officer of said department," thereby the Legislature is prohibited from creating other and additional offices in said department than that of Insurance Commissioner, and imposing duties upon such additional officers, unless they be subordinate to the Insurance Commissioner, and plaintiffs cite in support of this argument many cases in which were applied the rule that, where an office is created by or imbedded in the Constitution, and the duties thereof are defined by

that instrument, or where the office antedated the Constitution, and its duties were enumerated by the statute at the time the Constitution was adopted, or where the office owed its origin to the common law, and had certain well-recognized duties attached thereto, or inherently connected therewith, or forming a substantial part thereof, it was not within the power of the Legislature to transfer such duties to an office of its own creation or to an officer selected and chosen in a manner different from that by which the constitutional officer was named. Conceding the correctness of the rule contended for, it cannot have any controlling application here, because by section 22 of article 6 an Insurance Department is created, which is "charged with the execution of all laws now in force or that may be hereafter passed in relation to insurance and insurance companies doing business in the state," and no duties are prescribed by the Constitution for the Insurance Commissioner, but, on the contrary, by section 24 it is expressly provided that he shall perform such duties as may be prescribed by law, thereby indicating an intention upon the part of the people to leave to the Legislature the determination of what duties should be imposed upon the commissioner, but expressly asserting an intention that the execution of all laws then in force or which should thereafter be passed should be executed by the Insurance Department. The argument is made that the commissioner is the department. This argument does not appear to be sound; for, if it had been the intention of the people in adopting the Constitution to prohibit the creation of any other officers in this department, it would have been an easy matter to say so and to have created only the office of Insurance Com-

missioner, and not to have created the Insurance De-
partment. The fact that the department was created
and that the commissioner was designated as the chief
officer would imply, on the contrary, permission to add
other officers to the department, and that the department
so constituted, as distinct from the Insurance Commis-
sioner, should be charged with the execution of the·
laws upon the subject of insurance. In determining
the effect to be given to the words "chief officer," as ap-
plied to the commissioner, we are not aided by citation
to any authorities where a similar question has been con-
sidered by the courts, nor in our investigations have we
found any. We therefore turn to the Constitution and the·
laws in force at the time of its adoption in order to.
ascertain, if possible, the effect to be given to these
words as used in the connection indicated. Section 3942,
Stat. 1893, being section 4715, Rev. Laws 1910, pro-
vides that a summons against a corporation may be
served upon the president, mayor, chairman of the
board of directors or trustees, or other chief officer of
such corporation, and, in the event its chief officer is
not found in the county, upon certain other officers des-
ignated therein. Here the president, mayor, or chair-
man of the board of directors or trustees is referred to
as the chief officer of such corporation, but no one would
contend that such officer was the only officer of such
corporation, or that he possessed supreme power as such.
Section 6, art. 7, provides for the election of a Chief
Justice of the Supreme Court, whose duties are well
known. Section 2, art. 6, provides that the supreme ex-
ecutive power of the state shall be vested in a chief
magistrate, who shall be styled the Governor of the
State of Oklahoma, but the Constitution created other·

officers in the Executive Department, and conferred upon them certain powers and duties independent of the Governor, and has provided for the creation of certain boards of which the Governor is a member with the same authority as any other member of the board, as may be noted in the following instances: Commissioners of the Land Office (article 6, section 32); State Board of Equalization (article 10, section 21); State Board of Education (article 13, section 5). And the Legislature in various instances has created certain boards and commissions of which the Governor is a member, possessing like powers and duties with any other member; for example: State Game and Fish Commission (section 3293, Rev. Laws 1910). By section 6779, Rev. Laws 1910, the State Treasurer, by and with the consent of the Governor and Attorney General, is authorized to select depositories of the public funds, and the three officials named are authorized to approve securities offered for such deposits. So, by chapter 6, Sess. Laws' 1907-08, p. 125, the Governor was created a member of the State Banking Board. The law creating the banking board, providing for insurance of deposits, was under consideration by the court and its validity sustained in *State ex rel. West v. Farmers' Nat. Bank of Cushing*, 47 Okla. 667, 150 Pac. 212; *Noble State v. Haskell*, 22 Okla. 48, 97 Pac. 590.

Here we have constitutional and legislative construction of similar terms which support our conclusion in the present instance. The powers and duties of the various executive officers, with three exceptions, are defined in the Constitution, and in the following cases provision is made that additional duties may be prescribed by law: Article 14, creating a Banking Department and

placing same under the control of the Bank Commis-
sioner; also section 17, art. 6, prescribing certain duties
to be performed by the Secretary of State, and which
further provides : "He shall perform such other duties
as shall be prescribed by law." In article 6, section 19,
creating the office of State Examiner and Inspector, cer-
tain duties are prescribed, and it is then provided: "Other
duties and powers may be added by law." Article 6, sec-
tions 28 and 29, creates the office of Commissioner of
Charities and Corrections, prescribing certain duties, and
by section 30 it is provided that the Legislature shall
have the power to alter, amend, or add to the duties or
grant additional authority to such commissioner. In the
provisions in reference to the Commissioner of Labor
and Chief Mine Inspector no duties are prescribed for
them by the Constitution, the provision as to their duties
being similar to that in the case of the Insurance Com-
missioner, thus leaving it to the Legislature to prescribe
what duties shall be performed by such officers. The
right of the Legislature to create an office and to pre-
scribe the powers and duties thereof is one that is not
open to question in the absence of any constitutional
limitation. By article 5, section 36, it is provided:

"*Scope of Authority of the Legislature.*—The author-
ity of the Legislature shall extend to all rightful sub-
jects of legislation, and any specific grant of authority in
this Constitution, upon any subject whatsoever, shall not
work a restriction, limitation, or exclusion of such au-
thority upon the same or any other subject or subjects
whatsoever."

That the creation of an office and the prescribing of
its duties and powers is a rightful subject of legislation
is stated in 29 Cyc. 1368. The office of Fire Marshal
was created by chapter 46, Sess. Laws 1910-11, p. 114,.

and by that act he was required to report to the Insurance Commissioner, and his salary and expenses were to be paid out of a special tax upon the gross premium receipts of fire insurance companies. Thus it is seen that the Fire Marshal was already an officer of the Insurance Department. House Bill No. 70, which creates the Insurance Board, names the Insurance Commissioner and the Fire Marshal as two of its members, and provides for the appointment of a third member of the board, designated as secretary, whose duties have reference to insurance, and nothing else. The board is therefore a part of the Insurance Department, and includes in its personnel all the officers of that department as now constituted, and the duty of executing the laws relating to insurance is rightfully imposed upon the board. The Insurance Commissioner, as such, did not exist at the time of the adoption of the Constitution, but the Secretary of State was by section 6553, Wilson's Rev. & Ann. Stat., required to discharge certain duties under then existing laws in reference to insurance. He was not authorized to regulate rates of insurance companies, nor in the main discharge the duties imposed by House Bill No. 70 upon said Insurance Board. Therefore it cannot be said that the act in question comes within the rule of the authorities relied upon by plaintiffs; and the said act is not unconstitutional in the respects under consideration. Even though the duties imposed upon the Insurance Board by House Bill No. 70 had been a part of the duties of the Superintendent of Insurance at the time of the adoption of the Constitution, it was within the power of the people to redistribute the executive powers of the state government in any manner they saw fit, and to confer the duty of enforcing the laws

relating to insurance upon the Insurance Department, instead of an Insurance Commissioner, as they have done by that instrument, and previous conditions existing in Oklahoma Territory, had they been different, could not have the effect of preventing the exercise of such power nor have any weight with the court, except as they may have been considered in framing, the Constitution.

There is nothing in the provisions of article 9, section 19, of the Constitution that prevents the enactment by the Legislature of the act under consideration. That portion of the section cited declares that:

"The commission may be vested with such additional powers, and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law, in connection with the visitation, regulation, or control of corporations, or with the prescribing and enforcing of rates and charges to be observed in the conduct of any business where the state has the right to prescribe the rates and charges in connection therewith   *   *   *"

It is apparent that the power to regulate the rates and business of insurance was not, by the provision quoted, delegated to the Corporation Commission, nor has the Legislature, under the authority therein given to delegate such powers, seen fit to do so, and the mere fact that specific authority is conferred upon the Legislature to vest the commission with such additional powers and duties does not deprive the Legislature of authority to pass a law which is complete in itself, regulating the business of insurance, and, in order to insure a practical operation of the law, delegating to the Insurance Board administrative authority to make the necessary investigations, ascertain the necessary facts, and prescribe such reasonable rules and regulations as may be

necessary, when, as in this case, a review of the orders of
the board in this regard is provided for in the Supreme
Court.   Article 5, section 36, Constitution.

Various provisions of the act are attacked be-
cause, it is said, the subjects therein embraced are not
included within the title.   The provisions under consid-
eration in this respect all have reference to the regula-
tion of the business of insurance and insurance compa-
nies and their agents.   The argument is made that the
title of the act is not sufficiently broad to justify legisla-
tion of this character.   The title of the act is as follows:

"An act creating a State Insurance Board, providing
for the regulation and control of rates of premiums on
insurance and to prevent discriminations therein, and the
granting and revoking insurance agents' license and re-
pealing all laws or parts of laws in conflict herewith, and
declaring an emergency."

This title is sufficient to include within its terms a
law generally regulating the business of insurance, in-
surance companies, and insurance agents.   In *Conn. Mut.
Life Ins. Co. v. State Treas.*, 31 Mich. 6, the title of the
act was "An act to establish an insurance bureau."   In
determining that the provisions of the act there were
within the title, the court said:

"In declaring in the language of the title that the
act was one 'to establish an insurance bureau,' the Leg-
islature must be understood as saying that it was made
up of such provisions and details as were deemed suita-
ble for the object; and under such title, and in keeping
with, and in furtherance of, the single object expressed, it
was competent to go further than to enact mere organic
provisions.   It was certainly admissible to include any
just and pertinent regulations respecting the course of
action to be observed by the bureau as a state agency

towards those engaged in the business of insurance; and it was equally admissible to include any just and appropriate provisions for prescribing the duty due to the state in the matter of taxation from insurance companies. The fundamental principle of the law was the marking out the reciprocal rights and duties of the state and those carrying on insurance, and to provide the machinery for administration, in so far as the state by a political agency might properly supervise."

This opinion was concurred in by Mr. Justice Cooley, author of an able work on Constitutional Limitations.

In the case of *State v. Matthews*, 44 Mo. 523, the title of an act under consideration was "An act to create an Insurance Department," and in sustaining the validity of the act therein involved the court said:

"The act 'to create an Insurance Department' defines the duties and powers of the superintendent. It invests him with certain authority and power necessary to enable him effectively to execute and enforce the law, and make it subserve the object for which it was passed. For the purpose of obtaining information and thoroughly understanding the condition of insurance companies, they were required to furnish him with certain statements and facts; and a refusal to comply with that duty was made a misdemeanor. Therefore, whenever they fail to comply with or violate the provisions of the said thirteenth section, they are liable to be proceeded against for a misdemeanor. * * * So in the organization of the Insurance Department it was necessary, in order to carry out the act, to empower the superintendent to do certain things; but the power would have been fruitless without authority to enforce it. To say that a separate chapter must be enacted for every provision in the framework of a law, with a distinct title, would be almost impossible and wholly ridiculous."

The title of the act involved in *Hickman v. State,* 62 N. J. Law, 499, 41 Atl. 942, was "An act to provide for the incorporation and regulation of insurance companies," and it was held in that case that the title warranted legislation regulating the business in that state of foreign insurance companies and the prosecution of their agents for unlawfully transacting business in their behalf. So in the case of *State v. Twining,* 73 N. J. Law, 683, 64 Atl. 1073, 1135, under an act entitled "An act concerning trust companies," it was held that the title was sufficiently broad to include within the object of the act legislation including not only trust companies, but also safe deposit and trust companies exercising trust powers, and any regulation deemed proper to enforce the provisions of the act by penalties or prosecution. In the case of *People v. Superior Court,* 100 Cal. 105, 34 Pac. 492, the title of the act was "The Bank Commissioner's Act," and it was held to be sufficiently general in its scope to warrant legislation regulating the banking business and provisions for the enforcement thereof.

The rule in this state with reference to the title of an act was stated in *City of Pond Creek v. Haskell,* 21 Okla. 711, 97 Pac. 338, as follows:

"Under this clause of the Constitution, the title of a bill may be very general, and need not specify every clause in the statute, it being sufficient if they are all referable and cognate to the subject expressed; and, when the subject is expressed in general terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in and authorized by it."

See, also, *In re County Com'rs, 7th Jud. Dist.,* 22 Okla. 435, 98 Pac. 557; *State v. Hooker,* 22 Okla. 712,

98 Pac. 964; *Holcomb v. C., R. I. & P. Ry. Co.*, 27 Okla. 667, 112 Pac. 1023; *Coyle v. Smith et al.*, 28 Okla. 121, 113 Pac. 944; *Binion, Sheriff, v. Okla. Gas & Elec. Co.*, 28 Okla. 356, 114 Pac. 1096; *Jefferson v. Toomer*, 28 Okla. 658, 115 Pac. 793; *Rea, County Clerk, v. State*, 29 Okla. 708, 119 Pac. 235; *Leatherock v. Lawter*, 45 Okla. 715, 147 Pac. 324; *Ex parte Ambler*, 11 Okla. Cr. 449, 148 Pac. 1061.

The fact that penalties are imposed for violation of the provisions of the act does not render these sections void as being without the title; for it would be a natural complement to the act regulating the business of insurance to include any just and proper provisions for enforcing the duties imposed upon the persons and companies affected, and to prescribe penalties for the violation thereof. *Plumb v. Christie*, 103 Ga. 700, 30 S. E. 759, 42 L. R. A. 181; *State v. Matthews, supra; State v. Bernheim*, 19 Mont. 512, 49 Pac. 441; *Gothard v. People*, 32 Colo. 11, 74 Pac. 890; *Hartford Fire Ins. Co. v. Raymond, Ins. Com'r*, 70 Mich. 485, 38 N. W. 474. And it is also permissible to make the provisions of said act applicable to the agents of the companies affected, requiring obedience upon their part to said law, and prescribing punishment for a violation thereof. It cannot be said that such provisions interfere with the right of contract or deprive the agents affected of property without due process of law. Corporations organized under the laws of other states to engage in and carry on the business of insurance cannot carry on said business in this state without permission from the state, express or implied, nor have they any right to take risks or transact such business in this state without first having complied with the laws of the state. It has been repeatedly held

that corporations of one state have no right to exercise their franchises in another state without the consent of the state and upon such terms as may be imposed by the state in which their business is carried on, not inconsistent with the federal Constitution; such conditions being within the discretion of the Legislature. The authorities upon this point are collected in the second volume of the Digest of United States Supreme Court Reports, published by the Lawyers' Co-operative Publishing Company, under the title "Corporations" (section 761). Such corporations must act through agents, and the penalties of a restrictive statute affecting them may fairly be visited upon their agents. Such provision is incidental to the general object of the regulation of the business of insurance, and, if this power be denied, the regulation becomes ineffectual. *Hickman v. State,* 62 N. J. Law, 503, 41 Atl. 942; *State v. Morgan,* 2 S. D. 32, 48 N. W. 314; *Insurance Co. v. Raymond,* 70 Mich. 485, 38 N. W. 474.

It was not necessary that the provision authorizing appeal should be expressed in the title; such provision being incidental to and a necessary requisite to the regulation intended, preserving to the companies and individuals affected the right to a review in the courts of any order, rule, or regulation that might be prescribed by the Insurance Board. *Ex parte Ambler,* 11 Okla. Cr. 449, 148 Pac. 1061. The general scope and purpose of the act being to regulate the business of insurance, and the various provisions being cognate to the subject, and properly connected therewith and necessary to an effectual regulation, such as is intended by said act, we think the title thereof was sufficient to embrace within its general scope the various provisions challenged.

Section 19 is assailed upon the theory that it is class legislation and an unjust discrimination between classes of companies therein enumerated. This question was involved in the case of *German Alliance Ins. Co. v. Lewis,* *supra,* where complainant attacked the statute of Kansas as discriminating against complainants because it excluded from its provisions farmers' mutual insurance companies organized and doing business under the laws of that state, and insuring only farm property. In holding adversely to this contention, the court said:

"There are special provisions in the statutes of Kansas for the organization of co-operative companies, and, if the statute under review discriminates between them, the German Alliance Company cannot avail itself of the discrimination. A citation of cases is not necessary, nor for the general principle that a discrimination is valid if. not arbitrary, and arbitrary in the legislative sense—that is, outside of that wide discretion which a Legislature may exercise. A legislative classification may rest on narrow distinctions. Legislation is addressed to evils as they may appear, and even degrees of evil may determine its exercise. *Owen Lumber Co. v. Union County Nat. Bank,* 202 U. S. 623, 26 Sup. Ct. 768, 50 L. Ed. 1176. There are certainly differences between stock companies, such as complainant is, and the mutual companies described in the bill, and a recognition of the differences we cannot say is outside of the constitutional power of the Legislature. *Orient Ins. Co. v. Daggs,* 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552."

A similar classification was upheld in *Citizens' Insurance Co. v. Clay et al., supra,* where the Kentucky state insurance rate law excepted from its operation purely mutual or profit-sharing companies, or co-operative companies not operating for profit, and church insurance com-

panies. The objection that the section mentioned is class legislation cannot be sustained.

Subdivision C of section 10, which provides a penalty for any insurance company, foreign or domestic, requiring any person as a condition precedent to his appointment as agent or retaining an agency for said company to refuse or surrender the agency of any domestic insurance company, is assailed as being in contravention of section 2, art. 2, of the Constitution, which provides:

"All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry."

And a portion of section 12 is also assailed as being an infringement of the rights of an insurance agent, granted to him by said section of the Constitution. Upon this question it is sufficient to say that plaintiff is not in position to raise these objections to the sections challenged, and therefore we will not consider same for this reason. *Rea v. State,* 29 Okla. 708, 110 Pac. 235; *Robertson et al. v. Board of Commissioners,* 14 Okla. 407, 79 Pac. 97; *Stine v. Lewis, Sheriff, et al.,* 33 Okla. 616, 127 Pac. 396.

Complaint is also made of the action of the Insurance Board in refusing to approve the form of policy submitted by plaintiff because same appears to be a joint policy issued by it and another company, and has indorsed on the filing back thereof in large letters the words "PHILADELPHIA UNDERWRITERS' DEPARTMENT," and immediately following and in connection therewith, but in small letters, the words "Of Both Companies." It does not appear from the pleadings or evidence that plaintiff has used or will use such form of policy without the

OCTOBER TERM 1915.—Vol. XLIX.     643

approval of the board; and therefore there is no cause for interference until a case shall be presented where actual relief may be granted.

Plaintiff is not entitled to the relief demanded, for the additional reason that, the act conferring authority upon the Insurance Board to act in the premises being valid, and provision being made therein for an appeal to this court, the plaintiff is not entitled to resort to a court of equity for injunctive relief, but must pursue the remedy provided by the statute, which in this case appears to us to be plain, speedy, and adequate. *Ellis v. Akers et al.,* 32 Okla. 96, 121 Pac. 258; *Harris et al. v. Smiley,* 36 Okla. 89, 128 Pac. 276.

For the foregoing reasons, the order of the trial court denying the temporary injunction is affirmed.

All the Justices concur.