

# THE ATTORNEY GENERAL
## OF TEXAS

RICE DANIEL      AUSTIN 11, TEXAS
TORNEY GENERAL

October 29, 1951

Hon. Joe P. Gibbs
Casualty Insurance Commissioner
Board of Insurance Commissioners
Austin, Texas      Opinion No. V-1335

Re: Authority of the Board
of Insurance Commissioners
to order regulation under
the "casualty insurance"
rate statutes of liability
insurance rates applicable
to trucks operating under
Interstate Commerce Com-
mission permits.

Dear Sir:

Your recent request for an opinion asks whether liability insurance rates on certain motor vehicles used by motor carriers operating under permits of the Interstate Commerce Commission, if so ordered by the Board of Insurance Commissioners, may be regulated under the provisions of Article 5.13 through 5.24 of the Insurance Code /4698a/,[1] which authorize regulation of "casualty insurance" rates. Liability insurance on such vehicles is now regulated under Articles 5.01 through 5.12 of the Insurance Code /4682b/, which authorize regulation of "motor vehicle insurance" rates. We will hereafter refer to these two groups of Articles respectively as the "casualty rate law" and the "motor vehicle rate law."

You indicate that these vehicles operate in other States and are subjected to hazards quite different from those

---

[1] Statutory references in this opinion are to the "Insurance Code," enacted as Senate Bill 236, Acts 52nd Leg., R.S. 1951, ch. 491, p. 868, unless otherwise indicated. Corresponding references to Vernon's Civil Statutes in effect prior to the effective date of Senate Bill 236 are noted, where practicable, in brackets following such references. Section 2 of Senate Bill 236 provides that "Nothing contained in this Act shall be held or construed to effect any substantive change in the laws existing prior to the passage of this Act. . . ."

applicable to intrastate or local operations. Due to this fact, you have been petitioned to order liability insurance on such vehicles regulated under the casualty rate law, which is said to allow more flexibility in gearing insurance costs to the current experience of such carriers by enabling promulgation of more than one rating plan.

Specifically you ask whether such order is authorized by the terms of Article 5.02 /added to the motor vehicle rate law by Senate Bill 431, Acts 51st Leg., R.S. 1949, ch. 462, p. 847/.

The motor vehicle rate law requires "rates of premium . . . charged and collected by all insurers writing any form of insurance on motor vehicles in this state" to be fixed by the Board in accordance with its terms. It covers insurance on motor vehicles used by such carriers.

The casualty rate law authorizes the regulation of rates for "casualty insurance" and expressly excludes from its application a number of designated types or kinds of insurance. "Motor vehicle" insurance is among those expressly excluded.

The amendatory Act of 1949, upon which the whole question turns, reads:

"An Act to authorize the further regulation
and supervision of Automobile Insurance
and amending Chapter 253, Acts of the
40th Legislature, page 373, as amended;
and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That Chapter 253, Acts of the
40th Legislature, 1927, as amended, also known
as Article 4682b, Vernon's Civil Statutes of
Texas, is hereby amended by adding thereto a new
section, to be known as Section 1A, to be inserted
immediately preceding Section 2, to read as follows:

"'Section 1A. There shall be excluded from
regulation under the provisions of this Act any
insurance against liability for damages arising
out of the ownership, operation, maintenance or
use of or against loss of or damage to motor ve-
hicles described in the foregoing section which

may, in the judgment of the Commissioner, be a type or class of insurance which is also the subject of or may be more properly regulated under the terms or provisions of other insurance rating laws heretofore or hereafter enacted covering such insurance. If such situation shall be found to exist, then the Commissioner shall make an order declaring which of the said rating laws shall be applicable to such type or class of insurance, and to any motor vehicle equipment mentioned in Section 1 of this law.'

"Sec. 2. The fact that the present automobile rating laws now in effect in Texas contain some conflicts so that it is difficult for the administrative authorities and the insurance industry to tell under which law a certain type of insurance or a certain type of property is to be supervised or regulated, and the fact that it is highly desirable that some method for the composing of these differences and conflicts be vested in the administrative authorities, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three consecutive days in each House be, and said Rule is hereby suspended; and this Act shall take effect and be in force from and after its passage, and it is so enacted."

In briefs submitted by interested parties it is argued on the one hand that insurance against liability for damages arising out of the ownership, operation, maintenance, or use of or against loss of or damage to motor vehicles is neither "the subject of" the casualty rate law nor is that law an "insurance rating law . . . covering such insurance," as required by the amendment before such an order is permitted. This argument is based in the main on the fact that the casualty rate law expressly excludes "motor vehicle insurance" from its application. These parties concede that the amendment of 1949 to the motor vehicle rate law is intended to authorize the Board to order regulation of certain forms of insurance involving motor vehicle and transportation operations under other statutes, but it is insisted that the Board may so act only in special instances of uncertainty as to which of two or more statutes apply, citing the "emergency clause" of the amendatory Act. Since motor vehicle insurance is expressly excluded from regulation under the casualty rate law, they

say that there is no "difference," "difficulty," "conflict," or similar uncertainty, within the meaning of the "emergency clause," as to whether the kinds of insurance here involved should be supervised or regulated under the casualty or the motor vehicle rate laws.

These parties also contend that to empower the Board to choose some other statute under which to regulate insurance as to some motor vehicles merely because the Board concludes that such may be "more properly" regulated would effect an unconstitutional delegation of legislative power without a sufficient standard to guide the Board and an unconstitutional delegation of power to suspend the motor vehicle rate law.

It is argued, on the contrary, that such construction would render the amendment presently and practically meaningless, since no other rating law covers "motor vehicle insurance" as such. The construction urged is, in effect, that the "insurance" which must be the "subject of" or "covered by" such other laws is insurance against loss or damages resulting from accident to or injury suffered by any person for which accident or injury the assured is liable, or insurance against loss or damage to an insured's property. These parties argue that their construction is constitutional.

The 1949 amendment to the motor vehicle rate law is clearly intended to authorize the Board of Insurance Commissioners to regulate certain motor vehicle insurance rates under the provisions of other statutes. It says, in effect, that any form of insurance covering liability of those in charge of a motor vehicle or covering loss of or damage to a motor vehicle shall be regulated under any other statute regulating rates on insurance of the same "type or class" when so ordered by the Board under the conditions stated. The problem presented is, then, whether insurance against liability for damages arising out of ownership, operation, maintenance, or use of motor vehicles operating under permits of the Interstate Commerce Commission is a "type or class of insurance" which is also the subject of or covered by the casualty rate law.

Obviously, at the time of the amendment, no other statute applied to "motor vehicle insurance" as defined in the motor vehicle rate law, since the motor vehicle rate law specifically covered insurance on motor vehicles and its provisions were therefore exclusive on the subject. Regulation of rates on motor vehicle insurance as there defined was as

certainly and effectively excluded from the provisions of all other rate statutes as it was from the casualty rate law, regardless of an express exclusion. Consequently, the 1949 amendment must have been intended to authorize the Board to regulate rates thereon under other statutes applicable to hazards or perils similar to those to which motor vehicle owners and operators are exposed, and to repeal any express or implied restrictions then in effect.

We have no doubt that insurance against liability for damages arising out of the ownership, etc., of motor vehicles is a similar "type or class" of insurance to that covered by the casualty rate law applicable to "casualty insurance," although the term "casualty insurance" is not defined in the statutes. Your letter states that liability insurance is within the general category known as "casualty insurance," and, since such phrase is a term used in the statute in connection with the insurance business, your interpretation of its meaning is authoritative. Article 10 of Vernon's Civil Statutes provides that in construing civil statutes "the ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject matter, when they shall have the signification attached to them by experts in such art or trade . ."

We do not find the few available decisions discussing the term "casualty insurance" to be particularly pertinent to a construction of the term as used in the casualty rate law. That it includes the type of insurance in question, however, is, in our opinion, established by an examination of the insurance statutes. Chapter 8 of the new Insurance Code, like Chapter 18 of Title 78 of the Revised Civil Statutes of 1925, is headed "General Casualty Companies." Organization of corporations is there authorized to insure against, among other hazards, loss or damages resulting from accident to or injury suffered by any person for which accident or injury the assured is liable. See Article 8.01 /4989/. The term is also defined in "Dictionary of Insurance Terms," published by the Chamber of Commerce of the United States in 1949, as "a class of insurance made up of a variety of subclasses, principally concerned with insurance against loss due to legal liability to third persons . . ." Insurance against liability arising from truck operations is clearly within a general class of insurance dealing with responsibility of the insured to third persons for injury and damage caused by accidents and is a form of "casualty insurance," as that term is used in the casualty rate law.

Having determined what we believe to be the clear

intent of the amendment of 1949, we do not consider an extended discussion of the emergency clause necessary. The emergency clause may be looked to as an aid to construction of a statute but it "cannot be invoked for the purpose of raising an ambiguity in the language of the statute." Lloyds Casualty Co. of New York v. Lem, 62 S.W.2d 497, 499 (Tex. Civ. App. 1933, error dism.); Ex parte Hayden, 215 S.W. 2d 620 (Tex. Crim. 1948).

The effect of the 1949 amendment is to modify the exclusion of motor vehicle insurance from regulation under other statutes applicable to the same general "type or class" of hazards in cases where the Board concludes that such insurance may be more properly rated under such other statutes and orders regulation of rates thereunder. See Urban v. Harris County, 251 S.W.594 (Tex. Civ. App. 1923, error ref.), quoting Sutherland on Statutory Construction, as follows:

"A new statute, which affirmatively grants a larger jurisdiction, or power, or right, repeals any prior statute, by which a power, jurisdiction, or right less ample or absolute has been granted. 'If the exercise of a power granted by a legislative act may include going beyond limits fixed by a prior statute, such limit is impliedly removed, at least so far as it conflicts with the doing of that which is subsequently authorized."

We therefore conclude that the motor vehicle rate law, as amended in 1949, authorizes the Board, upon a finding that more proper regulation of rates on such insurance can be accomplished under the casualty rate law, to order regulation under the latter statutes.

We also conclude that Article 5.02 thus construed is not unconstitutional as improperly delegating legislative powers to make or suspend laws. The power here is to apply one of several statutory systems to the specific subject matter, which is the effect of the amendment regardless of which suggested construction is adopted. Power to regulate rates on insurance is commonly delegated to special regulatory agencies who are granted broad discretion in regard thereto. Article 5.60 /4911/ authorizes the Board to regulate Workmen's Compensation insurance rates. Discretion is vested in the Board as to whether certain systems of rating designated in the statute shall be promulgated. Article 5.01 /4682b, Sec. 1/ delegates power to the Board to approve various systems of rating. The standards by which the Board

is to be guided are set out in the broadest terms. The rates must be "just, reasonable and adequate." The standard set out in Article 5.14 /4698a, Sec. 2/ is that "Rates shall be reasonable, adequate, not unfairly discriminatory and non-confiscatory as to any class of insurer."

The various insurance rate regulatory statutes are all intended to result in rates as to any particular class of risk based on essentially the same considerations and standards, so that, in the final analysis, alternatives as allowed in any of these statutes are as to mechanics and classification. It is not as if one rate law contemplated a higher or lower average rate in relation to loss experience for the classes included than is contemplated in another rate law. The discretion authorized is as to the mechanics and classification system by which the just rate is to be determined. We see no essential difference in the discretion vested by the amendment and that commonly vested in rate regulatory statutes generally. No extended citation of authorities is necessary to establish the constitutional propriety of such delegation in connection with rate making. In Daniel v. Tyrrell & Garth, Inv. Co., 127 Tex. 213, 93 S.W. 2d 372, 375 (1936), in upholding Article 1302a, V.C.S., empowering the Board to regulate title insurance rates, the court said:

> "We think it is settled by the authorities of this state that rate-making, as that term is applied to cases such as this, is a legislative power, which can be delegated to a board or commission, under proper safeguards; . . ."

And see Board of Insurance Commissioners v. Carter, 228 S.W. 2d 335 (Tex. Civ. App. 1950, error ref. n.r.e.); State v. Whitman, 196 Wis. 472, 220 N.W. 929 (1928); Insurance Co. of North America v. Welch, 49 Okla. 620, 154 Pac. 48 (1915); State v. Howard, 96 Neb. 278, 147 N.W. 689 (1914); Henderson v. McMaster, 104 S.C. 268, 88 S.E. 645 (1916); Aetna Ins. Co. v. Hyde, 34 F.2d 185 (W.D. Mo. 1929) affirmed in 281 U.S. 331 (1930).

## SUMMARY

Article 5.02 of the Insurance Code authorizes the Board of Insurance Commissioners to order regulation under Articles 5.13 through 5.24 of the Code, covering "casualty insurance" rates, of public liability insurance rates on certain motor vehicles used by motor carriers operating in interstate commerce.

APPROVED:                                   Yours very truly,

Jesse P. Luton, Jr.                             PRICE DANIEL
Reviewing Assistant                         Attorney General

Charles D. Mathews                      By
First Assistant                                 Ned McDaniel
                                                        Assistant

NMc/rt